OPINION
Vlade ("Vlade") and Dragica ("Dragica") Sekulovski, defendants-appellants, appeal a judgment entered upon a jury verdict in the Franklin County Court of Common Pleas. A jury found appellants liable to Tom and Lena Bubev, plaintiffs-appellees, for conversion, breach of fiduciary duty, fraud, breach of contract, and breach of fiduciary duty pursuant to a joint venture. Appellees have also filed a cross-appeal regarding the granting of a motion for summary judgment in favor of appellants and Tony Sekulovski, defendant/cross-appellee. We reverse and remand.
Lena Bubev and Dragica Sekulovski are sisters and were married to Tom Bubev and Vlade Sekulovski, respectively. On May 12, 1998, appellees filed a complaint against Vlade, Dragica, and Tony Sekulovski and Carl and Bilana Balaloski. In the complaint, they alleged that in the early 1980's, they "associated with Vlade for the purpose of carrying on as co-owners of a business for a profit, which entailed the purchase and lease of various commercial properties in Ohio and Indiana." Appellees stated that since they were residing in Sydney, Australia, they agreed to entrust the book and recordkeeping management responsibilities for the business to Vlade. Appellees alleged that in 1986, a bank account was opened in the names of Tom Bubev and Vlade Sekulovski "for the purpose of accommodating direct deposits by various tenants for their lease payments and facilitating payments on various mortgage indebtedness to The Ohio Bank on the properties."
Appellees asserted that Vlade "did not deposit all monies owed to [appellees], and made unauthorized and improper withdrawals from said account." They also claimed Vlade was responsible for some transactions that were not in their best interests involving the following properties: a White Castle franchise located in Columbus, Ohio; a Burger King franchise located in Grove City, Ohio; a Wendy's franchise located in Fort Wayne, Indiana; three KFC franchises located in Berea, Brookpark, and Parma, Ohio; and a Rax franchise located in Kettering, Ohio.
Appellees requested the following remedies from the court: (1) a declaratory judgment concerning the ownership, operation, and management of the franchise properties pursuant to R.C. 2721.02, 2721.03, 2721.04, and 2721.06; (2) "an accounting and winding up of all activities of the partnership and management of the properties, including an inventory and appraisal of the assets and liabilities of the partnership"; (3) damages for Vlade's breach of fiduciary duties owed to the Bubevs; (4) damages for Vlade's breach of contract with the Bubevs; (5) damages based upon misrepresentations by Vlade with respect to the purchase, ownership, refinancing, and management of the properties; (6) the "imposition of a constructive trust" on the properties; (7) a partition of the properties pursuant to R.C. 5307.01-5307.25; and (8) damages for Vlade, Dragica, and Tony Sekulovski conspiring to deprive appellees of the rent from the KFC properties. Appellees amended their complaint on May 25, 1999, to include claims of unjust enrichment and estoppel.
On June 11, 1999, Vlade, Dragica, and Tony Sekulovski ("the Sekulovskis") filed a motion for partial summary judgment for appellees' claims relating to the Wendy's property. Appellees alleged in their complaint that appellants owned the Wendy's property. They also alleged that in August 1989, Vlade invited appellees to invest $75,000 in the property so they would own a one-half interest in the property. Appellees claim that they paid Vlade $75,000 but, he never transferred a one-half interest in the property to them.
On August 18, 1999, the trial court rendered a decision granting the Sekulovskis' motion for partial summary judgment. The court held that the Statute of Frauds barred appellees from bringing an action against the Sekulovskis regarding the Wendy's property "unless they can establish the existence of an agreement, memorandum, or note that has been signed by the [appellants]."
A trial was held from September 9-17, 1999. Appellees submitted four exhibits that showed the amount of rent collected from the Burger King, White Castle, KFC, and Rax properties, the amount of income generated from the properties, and what amount they believed they should have received. The total amount according to the figures in the four exhibits that appellees should have received was $320,204.76. In closing arguments, appellees' counsel argued that they were entitled to an award of $300,853.05 plus punitive damages and attorney fees.
The trial judge instructed the jury regarding each of the claims made by appellees. The jury was instructed that the conversion claim was based upon appellees being deprived of "rent monies and refinanced proceed monies." The breach of fiduciary duty claim was based upon Vlade's alleged abuse of the power of attorney granted to him by appellees. The fraud claim was based upon fraudulent misrepresentations of fact regarding the ownership of the properties and "factual matters pertaining to the amount of rents and income generated with respect to all properties, the amount of income to which [appellees] were entitled, and the disposition of the proceeds from various refinances." The breach of contract claim was based upon "the parties enter[ing] into a contract to jointly own commercial property and to share in the profits, that [appellants] broke the contract, and that this caused [appellees] to suffer damages." A review of the record and transcript do not show the jury received an instruction regarding an accounting of partnership assets.
The jury rendered the following verdicts in favor of appellees: (1) $125,000 against Vlade and Dragica for conversion; (2) $50,800 against Vlade for breach of fiduciary duty; (3) $50,800 against Vlade and Dragica for fraud; (4) $50,800 against Vlade and Dragica for breach of contract; and (5) $50,800 against Vlade and Dragica for breach of fiduciary duty pursuant to a joint venture. The total amount awarded by the jury was $328,200. The jury also held that appellants were liable for punitive damages and attorney fees. The parties settled the issue regarding the amount of punitive damages and attorney fees by written agreement. On September 29, 1999, the trial court filed a judgment entry on the jury verdict. Appellants appeal the September 29, 1999 entry and present the following five assignments of error:
 I. THE TRIAL COURT ERRED IN ENTERING JUDGMENT ON DAMAGES CLAIMS UPON WHICH NO RELIEF COULD BE GRANTED.
 II. THE TRIAL COURT ERRED IN ENTERING JUDGMENT ON DAMAGES CLAIMS WHEN THE JURY HAD SPECIFICALLY DETERMINED THAT THE RELATIONSHIP OF THE BUBEVS AND THE SEKULOVSKIS FROM WHICH THE CLAIMS AROSE WAS A JOINT VENTURE.
 III. THE TRIAL COURT ERRED IN ENTERING JUDGMENT WHEN THE JURY HAD NOT RETURNED A GENERAL VERDICT FOR THE JUDGMENT AMOUNT AGAINST THE SEKULOVSKIS.
 IV. THE TRIAL COURT ERRED IN ENTERING JUDGMENT WHEN THE JUDGMENT INCLUDED DUPLICATIVE DAMAGES ON MULTIPLE CLAIMS ALL ARISING FROM THE SAME RELATIONSHIP AND TRANSACTIONS.
 V. THE TRIAL COURT ERRED IN ENTERING JUDGMENT UPON JURY VERDICTS RENDERED AFTER THE COURT HAD COMMITTED CLEAR AND PREJUDICIAL ERRORS IN ADMITTING EVIDENCE OF PURPORTED ADMISSIONS IN SETTLEMENT NEGOTIATIONS.
Appellants argue in their first assignment of error that the trial court erred by entering judgment upon which no relief could be granted. Appellants claim that damages claims against other partners cannot be heard unless there has been a prior judicial accounting of their partnership assets and interests.
We first note that a review of the record shows that appellees attempted to characterize their transactions with appellants as a joint venture. However, appellees argue in their appellate brief that an accounting was not necessary because "the parties already knew and agreed that the partnership owned the seven properties and, further, agreed as to the respective ownership interests of each partner." Therefore, the first issue we will address is whether a partnership existed between the parties or whether the transactions can be characterized as a joint venture.
"A joint venture is a contractual association in which the parties intend to carry out a common business purpose [and] differs from a partnership in that it is entered into for a single transaction or a limited period of time." Nilavar v. Osborn
(1998), 127 Ohio App.3d 1, 20. In a joint venture, the parties must agree to engage in a specific business enterprise that does not rise to the level of a partnership. Silver Oil Co. v. Limbach
(1989), 44 Ohio St.3d 120, 124.
A partnership is an aggregate of individuals and does not constitute a separate legal entity. Arpadi v. First MSP Corp.
(1994), 68 Ohio St.3d 453, 457. The Uniform Partnership Law found in Chapter 1775 of the Revised Code states that a partnership "is an association of two or more persons to carry on as co-owners a business for profit." R.C. 1775.05(A). The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business. R.C. 1775.06(D). "The major distinction between a joint venture and a partnership is that a joint venture relates to a single enterprise and a partnership relates to a continuing business." Vargo v. Clark
(1998), 128 Ohio App.3d 589, 595.
A review of the evidence shows that the parties agreed to share profits from numerous properties over an extended period of time. The evidence does not show that the parties engaged in a "single transaction" over a "limited period of time." Therefore, we find that the parties were involved in a partnership and will analyze the present case based upon partnership law. We also note that, even though we are using partnership law, if it were found that the parties were involved in a joint venture only, our analysis would still be the same because "courts generally apply partnership law to joint ventures." Id., at 595.
In the present case, appellees were awarded damages based upon five different legal theories: conversion, breach of fiduciary duty, fraud, breach of contract, and breach of fiduciary duty pursuant to a joint venture. "[T]he usual and normal remedy for a breach of fiduciary duty or other legal conflict among partners is an accounting." Dunn v. Zimmerman (1994), 69 Ohio St.3d 304,307. The broad scope of circumstances listed in R.C.1775.21(A) and (D) indicates that an accounting is an appropriate remedy for a range of wrongs including breach of fiduciary duty, conversion, and conspiracy. Id. Additionally, a "partner has no right to recover of his co-partner any part of the earnings or profits of the business, until it has been ascertained that earnings or profits have been made, and an account stated between the parties as to the amount received by each." Oglesby v.Thompson (1898), 59 Ohio St. 60, 63.
 A partner cannot maintain an action for a money judgment against a co-partner, upon a claim of payment of a partnership debt, before a final accounting of partnership affairs has been had, except upon showing that that particular transaction had, by agreement, been withdrawn from the partnership account. Kunneke v. Mapel (1899), 60 Ohio St. 1, paragraph one of the syllabus. See, also, Dunn, at 307.
"The rationale for the rule of Kunneke and Oglesby was that until a full accounting had been done, it was impossible to tell, based on the entire scope of partnership transactions, who owed what to whom." Dunn, at 308. Therefore, an accounting is generally a prerequisite to an action at law that arises from the affairs of a partnership. Id., at 309. See, also, Caras v. Green Green
(June 28, 1996), Montgomery App. No. 14943, unreported, discretionary appeal not allowed (1996), 77 Ohio St.3d 1493. "This rule continues to be jurisprudentially sound because of the concern, as valid today as it was a century ago, that determining obligations between partners requires an inquiry into the full scope of the partnership business." Dunn, at 309.
A review of the present case shows that an accounting did not take place even though one was requested by appellees in their complaint. The jury trial that took place cannot be characterized as a proper accounting because "R.C. 1775.17(A) to (H) provide a set of rules for the court to follow in determining the rights and liabilities among partners when rendering an account." Dunn, at 307. The trial transcript shows that the "rights and duties of the partners in relation to the partnership" were not determined pursuant to R.C. 1775.17. Therefore, we find that the judgment rendered in favor of appellees cannot stand because "there could be no judgment in favor of either party before a full accounting had been completed." Dunn, at 308.
Appellees argue that appellants "grossly overstate the rule regarding an accounting as a prerequisite to an action for damages" and that an "accounting is not required where it would be a pointless exercise." The Ohio Supreme Court in Dunn did provide exceptions to the general rule that there can be no judgment in favor of either party before a full accounting had been completed. For example, an accounting is not needed when the basis of the suit does not involve a searching inquiry into the affairs of the partnership. Dunn, at 308. However, "[e]ven courts that have recognized exceptions to the traditional rule requiring an accounting * * * have applied the exception narrowly."Id.
 We recognize, however, that in the universe of disputes that might arise among partners, there may be some for which a formal accounting would be a pointless exercise. Such cases would involve disputes over a very limited time or number of transactions, whose resolution would not require a searching inquiry into partnership affairs. We emphasize that this would be the exceptional case. It would be the rare case indeed in which a trial court abuses its discretion in ordering an accounting as a means of determining a legal dispute between partners. Dunn, at 309.
A review of the record shows that the present case does not involve disputes "over a very limited time or number of transactions." The parties' dispute whether partnership profits and property were used properly from 1987 until 1998. To support their positions, the parties submitted over sixty exhibits which included numerous checks, cashier's checks, bank statements, power of attorney documents, loan documents, and property transfer documents. The damages sought by appellees include a request for a larger share of profits from the partnership than they had previously received from appellants. The parties' dispute "over a very limited time or number of transactions" took seven days of trial.
While appellees attempt to characterize the present case as a simple tort case involving the breach of fiduciary duty, breach of contract, fraud, and conversion, each of these actions allegedly occurred while appellants acted in their capacity as co-partners with appellees. Since partners are jointly liable for their obligations and suing one's partner would require the joinder of each member of the partnership, "[t]he result would be that, technically, [appellees] would be both plaintiff and defendant in the same cause." Dunn, at 308. The Ohio Supreme Court commented in Dunn that this scenario is another justification for the traditional rule that there could be no judgment in favor of either party before a full accounting had been completed.
Accordingly, we find that based upon the record, appellees were not entitled to a judgment in their favor before a full accounting had been completed pursuant to R.C. 1775.21. Appellants' first assignment of error is sustained. We do not need to address appellants' second, third, fourth, and fifth assignments of error because those assignments are rendered moot by our ruling on appellants' first assignment of error. App.R. 12(A)(1)(c).
Appellees have filed a cross-appeal, appealing the trial court's August 18, 1999 decision granting the Sekulovskis' motion for partial summary judgment and present the following assignment of error:
 THE TRIAL COURT ERRED IN GRANTING DEFENDANTS VLADE, DRAGICA, AND TONY SEKULOVSKI'S MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFFS' CLAIMS CONCERNING THE WENDY'S PROPERTY.
In their cross-assignment of error, appellees claim that the trial court erred in finding that the Statute of Frauds applied to their claims concerning the Wendy's property. Appellees argue that the Statute of Frauds does not apply because they are "asking for a refund of the sizable sum of $75,000 that they paid to Appellants to purchase an one-half interest in the Wendy's property" and are not "asking for specific performance of an agreement respecting land."
Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370; Gunsorek v. Pingue (Dec. 2, 1999), Franklin App. No. 99AP-62, unreported, discretionary appeal not allowed (2000),88 Ohio St.3d 1478.
Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. Welco Industries, Inc. v. AppliedCos. (1993), 67 Ohio St.3d 344, 346. "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion."Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482,485. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Baker v. TheBuschman Co. (1998), 127 Ohio App.3d 561, 566.
Ohio's Statute of Frauds, partially contained within R.C. 1335.05, states in part:
 No action shall be brought whereby to charge the defendant * * * upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.
"This statute serves to ensure that transactions involving a transfer of realty interests are commemorated with sufficient solemnity." North Coast Cookies, Inc. v. Sweet Temptations, Inc.
(1984), 16 Ohio App.3d 342, 348.
Several courts have held that the Statute of Frauds applies "to claims for breach of oral partnership agreements predicated on the failure of a partner to convey real property to the partnership or another partner as allegedly required by the terms of the agreement." Gunsorek v. Heartland Bank (1997),124 Ohio App.3d 735, 742-743. Even though appellees cannot seek to enforce the terms of the alleged agreement because of the Statute of Frauds, appellees are not barred from seeking to recover the $75,000 they claim they gave to Vlade based upon other legal theories of recovery. For example, appellees may be entitled to recover the $75,000 if after an accounting of partnership assets pursuant to R.C. 1775.17 or 1775.39 has been completed; the $75,000 was considered a contribution to the partnership's assets.
After having construed the evidence most strongly in appellees' favor, we find that appellees are not necessarily barred from recovery of the $75,000 even though they cannot "establish the existence of an agreement, memorandum, or note that has been signed by the [Sekulovskis]." Appellees may be entitled to receive damages under a different theory of recovery. Therefore, we find that the trial court erred when it granted summary judgment with respect to appellees' claims concerning the Wendy's property. Appellees' cross-assignment of error is sustained.
Accordingly, appellants' first assignment of error is sustained, appellants' second, third, fourth, and fifth assignments of error are rendered moot, and appellees' cross-assignment of error is sustained. We reverse the September 29, 1999 judgment entry and the August 18, 1999 decision granting the Sekulovskis' motion for summary judgment from the Franklin County Court of Common Pleas, and this cause is remanded to that court for further proceedings in accordance with law, consistent with our opinion.
Judgment reversed; cause remanded.
BRYANT and GREY, JJ., concur.
GREY, J., retired, of the Fourth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.