KAHLE, APPELLEE, *v.*
TURNER; V.F.W. POST 6770 ET AL., APPELLANTS.

(No. 793—Decided October 10, 1979.)

*Messrs. Keating, Muething & Klekamp* and *Mr. Louis F. Gilligan,* for appellee.

*Mr. Edward K. Halaby,* for appellants.

BLACK, J.   Defendants-appellants, V.F.W. Post 6770 and Western Reserve Mutual Casualty Company, seek reversal of the judgment of the Court of Common Pleas of Clermont County holding that Western Reserve Mutual Casualty Company (hereinafter Western Reserve) is obligated, as the in-

surer against premises liability on the property of V.F.W. Post 6770 (hereinafter the Post), to pay $100,000 to plaintiff-appellee, Kenneth Kahle (who brought the action individually and as administrator of the estate of Sharon Kahle, deceased), for injuries to him and for the death of his wife resulting from their fall from a ferris wheel operated by defendant William Turner (hereinafter Turner) during the 1974 "New Richmond Fair" held by the Post annually on the Fourth of July.

Appellants claim that the court erred in two respects. The first claimed error is the holding that the Post and Turner were engaged in a joint venture and, thus, that the Post was liable for Turner's negligence. Appellants concede that Turner was negligent, that this negligence was the proximate cause of Kahle's injury and his wife's death, and that the amount of damages exceeded the $100,000 limit of the premises liability policy issued by Western Reserve.[1] However, they contest the existence of a joint venture for the operation of the fair, claiming that the relationship between the Post and Turner was that of a property owner and an independent contractor. The second claimed error lies in the lower court's conclusion that since the Post was liable as a member of the joint venture, the accident was covered by the premises liability policy and Western Reserve was obligated thereunder to pay the damages for which the Post was liable. Western Reserve contends that the accident did not occur on the Post' premises and that it did not arise out of any activity covered by the policy.

We do not find appellants' arguments persuasive, and we hold that the trial court did not err. We affirm.

With respect to the issue of whether the Post and Turner were engaged in a joint venture, the record discloses the following characteristics of their relationship. Beginning in 1965, Turner contracted with the Post to participate in Fourth of July Fairs, the purpose of which was to turn a profit. For Turner, the profit was the standard goal of his amusement business; on the other side, the profit was used for the opera-

---

[1] Turner is not involved in this appeal because he and his insurer conceded the liability of both of them to Kahle to the extent of the policy limits of Turner's liability insurance policy. Since the amount of this settlement did not satisfy Kahle's total claim, the liabilities of the Post and of Western Reserve, as its insurer, remain to be determined. After the settlement with Turner and his insurer, Western Reserve was allowed to intervene as a defendant in order to have its obligation determined in this action.

tion of the Post and the maintenance of its premises. Under the contract between them, which was partially written and partially oral, Turner furnished about six amusement rides, one of which was the ferris wheel, brought the equipment to the site designated by the Post and furnished the personnel to assemble, erect and operate the rides. Turner furnished about 100 posters advertising the fair, and these announced that both the Post and Turner were sponsors. Turner furnished the ride tickets, consecutively numbered for accounting purposes, and Turner paid for one half of the cost of cleaning up the site after the fair was closed, the Post paying the other half.

The Post furnished the site of the fair which included its property and building together with the city block of George Street on which their property fronted. Post personnel obtained permission from the New Richmond authorities to "close-off" the block and to use the block for the duration of the fair. While the Post obtained the services of city police during the fair without special charge, it made a contribution to the "police fund," annually, at the appropriate time. Post personnel hung and distributed the advertising posters furnished by Turner, and otherwise promoted the fair in advance. They sold tickets for the amusement rides operated by Turner, thus, handling all of the cash receipts from the amusement rides. The Post furnished, at its cost and from its premises, all the electricity as well as the transformer and wires needed by Turner to operate his facilities.

In addition to the amusement rides, Turner ran certain concessions (baseball throwing, for instance) for his own account from small booths in what was called "the midway." The Post had five booths it ran for its own account (food, beverages and gaming tables) located at the front entrance of its building and elsewhere on the fair site.

The gross receipts from the amusement rides were divided as follows: 25 percent to the Post; and, 75 percent to Turner. In addition, Turner paid a flat fee of $15 for each of his concession booths. While the agreement was silent on expenses, the custom was that each party was responsible for the cost of those facilities, materials, supplies, services and personnel that were furnished by that party.

We hold that, under these circumstances, the Post and Turner were engaged in a joint venture and that the Post was

liable for damages and injuries caused by Turner's negligence in the maintenance and operation of the ferris wheel.

A joint venture arises from a contractual association of parties with the common purpose of carrying out a single business venture for their mutual profit, for which they combine their efforts, property, money, skill and knowledge without creating a partnership or a corporation. *Ford* v. *McCue* (1955), 163 Ohio St. 498. The relationship does not have the formality of a partnership or a corporation, and the legal concept is broad in that it has few fixed boundaries. Certain general factors must be present, in one form or another, depending upon the agreement of the parties: contributions of effort, property, skill, knowledge and "***other assets to***[the] common undertaking; a joint property interest in the subject matter of the venture and a right of mutual control or management of the enterprise; expectation of profits***; a right to participate***[therein]; and, usually, a limitation of the objective to a single undertaking***." 46 American Jurisprudence 2d 27-28, Joint Ventures, Section 7. In short, whether the parties have the relationship of joint venturers as a matter of law depends upon the facts and circumstances of the case. We hold that the appellants were joint venturers.

Appellants direct our attention to the absence of any sharing of expenses, to the absence of any agreement to share losses and to the Post' lack of control over Turner's employees and equipment. We are not persuaded that these characteristics of the relationship *sub judice* are determinative.

We find no requirement that the members of a joint venture must pool expenses as well as income; that is a characteristic of a partnership. In joint ventures, pooling of expenses is not an absolute necessity. There is no reason why the parties cannot agree as to "***which part of the expense each should bear before participating in profits.***" *Albina Engine & Machine Works* v. *Abel* (C.A. 10, 1962), 305 F. 2d 77, 82. In addition, an agreement to share losses need not be express. In the absence of such a provision, an agreement will be implied to share losses in the same proportion as profits are to be shared. 46 American Jurisprudence 2d 66, 67, Joint Ventures, Section 47.

As to control or management of the venture, construing the evidence most strongly in appellants' favor, the Post had

no specific control over Turner's employees, who remained in his control and were not loaned servants. Turner and his employees were primarily responsible for the maintenance and operation of the ferris wheel. Nevertheless, the Post controlled the sale of tickets for the amusement rides, promoted and advertised the rides and had an admitted interest both in selling rides and in the safety of the devices. One joint venturer may surrender control of a part of the venture to another joint venturer without defeating the existence of the joint venture. *Wittner v. Metzger* (1962), 72 N.J. Super. 438, 178 A. 2d 671. The overall control of the fair was shared by the Post with Turner, both of whom had such a community of interest in the venture and such concurrent participation in the operation and success of the ferris wheel, that it is fair to hold one party liable for the negligence of the other.

With respect to the question of whether Western Reserve is obligated under the premises liability policy *sub judice* to indemnify the Post for its liability to Kahle, we conclude that the location of the ferris wheel at the time in question was within the "insured premises." The parties agreed that the insured premises were defined as "all premises owned by or rented to the named insured with respect to which the named insured is afforded coverage for bodily injury liability under this policy, and *includes the ways immediately adjoining on land.*" (Emphasis added.) We construe that definition to include the location of the ferris wheel, under the facts and circumstances of this case.[2]

The fair spread from the Post' lot and building on to George Street, which was blocked at its north and south inter-

---

[2] We hold that the trial court reached the correct judgment, albeit for reasons other than those we find persuasive. We do not base our decision, as did the trial court, on different wording in the insurance policy. That language is found in the definition of the risks covered, which include bodily injury and property damage caused by "an occurrence***arising out of the ownership, maintenance or use of the insured premises and *all operations necessary or incidental thereto.*" (Emphasis added.) The court below held that since the Post' share of the fair's profits was used for the operation of the Post, the fair was clearly incidental to the ownership, maintenance or use of the premises. We agree that the fair was in this sense "incidental" to the use of the property; but, since the policy was intended to cover liabilities arising from the premises as an identifiable area, we believe that we rest our decision on firmer ground when we conclude that the fair was in fact held on premises intended to be insured. If the fair had been held on an open field five miles away from the Post' property in New Richmond, we doubt that we would reach the same result.

sections so that the fair site included the entire city block as well as the Post' premises. While the Post' premises fronted only on the north half of that block, it used the entire block from its north intersection with Washington Street to its south intersection with Front (Ohio) Street. The ferris wheel was located in the south half of the block, on the west portion of the pavement, about 75 feet south of the southeast corner of the Post' property. Construing the policy in favor of the purchaser (the insured) and against the writer (the insurer), under established precedent, we hold that the accident occurred within the range of property contemplated by the parties to the insurance policy and was one of the risks insured against; and, we further hold that the ferris wheel, being located on a way immediately adjoining the Post' lot, was within the insured premises.

Neither assignment of error has merit. Accordingly, we affirm the judgment of the Court of Common Pleas of Clermont County.

*Judgment affirmed.*

KEEFE, P. J., and BETTMAN, J., concur.