VARGO, Appellee,

v.

CLARK et al., Appellants.

[Cite as *Vargo v. Clark* (1998), 128 Ohio App.3d 589.]

Court of Appeals of Ohio,
Fourth District, Lawrence County.

No. 97CA37.

Decided June 24, 1998.

590

*David Reid Dillon,* for appellants.[1]

KLINE, Judge.

Wayne and Nancy Clark appeal the judgment in favor of Ruth Vargo, following a bench trial in the Lawrence County Court of Common Pleas. The Clarks assert that the trial court erred in finding that the Clarks and Vargo formed a joint venture. We disagree because the trial court's decision is supported by competent, credible evidence. Alternatively, the Clarks argue that the trial court erred in dividing the Clarks' real estate as an asset of the joint venture. We disagree because we find competent, credible evidence to support the Clarks' intention to contribute the real estate to the joint venture. The Clarks also contend that the trial court erred by failing to consider the monetary debt they incurred. We agree because the record contains competent, credible evidence that the Clarks incurred debt which the trial court did not consider in dividing the assets and liabilities of the joint venture. Finally, the Clarks contend that the trial court erred in holding them liable to Vargo. We disagree, because the trial court did not err in implying a contract between the Clarks and Vargo.

Accordingly, we affirm in part and reverse in part the decision of the trial court, and we remand this case to the trial court for further proceedings consistent with this opinion.

I

Nancy Clark and Vargo are sisters. The Clarks and Vargo discussed opening a grocery store in Arabia, Ohio. The Clarks owned real estate, and Nancy had

---

1. Appellee Ruth Vargo did not enter an appearance.

worked in the grocery business, but they lacked the financial resources to build and run a grocery. Vargo sent the Clarks an initial investment to begin construction on the grocery store. The Clarks deposited the money in an account for C&C Grocery. Vargo quit her job and moved from Michigan to Ohio to live with the Clarks. The Clarks and Vargo never entered into a written contract.

Vargo provided funds, mainly by incurring debt on her credit card, for building the store and buying inventory and equipment. Vargo also paid some of the Clarks' bills. On April 1, 1996, C&C Grocery opened for business. Vargo and each of the Clarks spent about the same amount of time in the store. However, due to personal and/or financial difficulties between Vargo and the Clarks, Vargo returned to Michigan in July 1996. The Clarks paid on Vargo's credit card from approximately July 1996 until March 1997. Vargo then filed an action for breach of contract.

At trial, the Clarks asserted that Vargo volunteered all of the funds she contributed to their business but also testified that they agreed to give her one third of the business. Wayne Clark testified that he never entered into a written contract with Vargo because he did not want anyone to have an interest in his land. The Clarks' home and their daughter's home also sit on the six-acre tract that they used for the grocery. Wayne testified that the real estate (the store and the land it occupies) is worth approximately $75,000, the inventory $10,000 to $12,000, and the equipment $20,000.

Nancy testified that she and her husband borrowed approximately $22,000 from American General and $35,000 from Wayne's father to contribute to the business. The Clarks presented no other evidence of their expenses.

Vargo testified that she and the Clarks agreed that she would contribute to C&C Grocery and receive fifty percent of the business in return. Vargo presented evidence of cash disbursements to the Clarks and C&C Grocery and of her credit card and other debt incurred in financing the grocery.

The trial court found that the Clarks and Vargo formed a joint venture to carry out their grocery store plan, and Vargo provided funds for the business, incurring $35,081 in debt. The trial court further found that the Clarks contributed their land and Nancy contributed her knowledge of the grocery business.

The trial court found that the assets of C&C grocery include the store and land, worth $75,000, inventory worth $10,000 to $12,000, and equipment worth $20,000. The court totaled C&C's assets at a value of $106,000 and found debts of $35,081.

The trial court then divided the assets and debts based upon Vargo's contention that her share equaled fifty percent jointly and severally as follows:

50% of Assets of $106,000.00 = $53,000.00
50% of Debts of $35,081.00 = $17,540.50

Total judgment $70,540.50

The Clarks appeal the judgment of the trial court, asserting the following assignments of error:

"I. A joint venture was not created between the parties, as found by the trial court, because there was no evidence that there was a contract among the parties.

"II. Even assuming that the court was correct in holding that a joint venture existed between the parties, the trial court erred to the prejudice of appellants in holding that the real estate and other assets were assets of the joint venture and subject to division between the parties.

"III. The trial court erred in determining the losses of the alleged joint venture by failing to consider contributions made by defendants-appellants to the alleged joint venture.

"IV. The trial court erred in failing to find that defendants-appellants were not liable to plaintiff-appellee for moneys expended by her."

## II

In their first assignment of error, the Clarks contend that the trial court erred in finding that the parties formed a joint venture because the Clarks and Vargo did not form a valid contract. Specifically, the Clarks assert that they did not agree on their salaries, the interest paid to Vargo, or how they would divide the invested money or work. Therefore, the Clarks argue that the contract must fail for a lack of definiteness.

A finding of a joint venture depends on the facts and circumstances of each case. *Kahle v. Turner* (1979), 66 Ohio App.2d 49, 51, 20 O.O.3d 111, 112–113, 420 N.E.2d 127, 129–130. A factual finding of the trial court will only be reversed by a reviewing court if the reviewing court finds it is against the manifest weight of the evidence. See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276–1277. Findings supported by some competent credible evidence will not be reversed as being against the manifest weight of the evidence. *Id.*

The Ohio Supreme Court defines a "joint venture" as follows:

" 'An association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, without creating a partnership, and agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each

coadventurer shall stand in the relation of principal, as well as agent, as to each of the coadventurers[.]' " *Al Johnson Constr. Co. v. Kosydar* (1975), 42 Ohio St.2d 29, 71 O.O.2d 16, 325 N.E.2d 549, paragraph one of the syllabus, quoting *Ford v. McCue* (1955), 163 Ohio St. 498, 56 O.O. 410, 127 N.E.2d 209, paragraph one of the syllabus. See, also, *Kahle, supra.*

■■■ The major distinction between a joint venture and a partnership is that a joint venture relates to a single enterprise and a partnership relates to a continuing business. *Ford* at 502–503, 56 O.O. at 412–413, 127 N.E.2d at 212–213. Thus, courts generally apply partnership law to joint ventures. *Al Johnson Constr. Co.* at 32, 71 O.O.2d at 18, 325 N.E.2d at 552–553, Members of a joint venture need not share expenses equally or expressly contract to share losses. *Kahle* at 52, 20 O.O.3d at 113, 420 N.E.2d at 130, quoting *Albina Engine & Machine Works, Inc. v. Abel* (C.A.10, 1962), 305 F.2d 77, 82. In the absence of an express agreement to share losses, a court will imply that the parties intended to share losses in the same proportion as profits. *Kahle* at 52, 20 O.O.3d at 113, 420 N.E.2d at 130, citing 46 American Jurisprudence 2d (1994), 66, 67, Joint Ventures, Section 47. See, also, *Spitznaugle v. Green* (1930), 8 Ohio Law Abs. 213.

■■■ Generally, courts recognize three types of contracts: express, implied in fact, and implied in law. *Legros v. Tarr* (1989), 44 Ohio St.3d 1, 6, 540 N.E.2d 257, 262–263, citing *Hummel v. Hummel* (1938), 133 Ohio St. 520, 525, 11 O.O. 221, 223, 14 N.E.2d 923, 925–926; *Sabin v. Graves* (1993), 86 Ohio App.3d 628, 633, 621 N.E.2d 748, 751–752, appeal dismissed on application of appellant in (1993), 66 Ohio St.3d 1503, 613 N.E.2d 648. In an express contract, the parties assent to the terms as actually expressed through the offer and acceptance. *Id.* In a contract implied in fact, the meeting of the minds is shown by the surrounding circumstances that demonstrate that a contract exists as a matter of tacit understanding. *Id.* In contracts implied in law, civil liability attaches by operation of the law upon a person who receives benefits that he is not entitled to retain. *Id.* Contracts implied in law are not true contracts, but quasi-contracts or constructive contracts imposed by courts to prevent unjust enrichment. *Id.*

■■■ In order to determine whether a court can enforce a contract, a court must be able to determine the terms of the contract. Vagueness of expression, indefiniteness, and uncertainty as to any of the essential terms of an agreement prevent the creation of an enforceable contract. *Rulli v. Fan Co.* (1997), 79 Ohio St.3d 374, 376, 683 N.E.2d 337, 338–339, quoting 1 Corbin on Contracts (Rev.Ed. 1993) 525, Section 4.1.

■■■ Here, in light of the accompanying factors and circumstances, competent, credible evidence supports the trial court's finding that the Clarks and Vargo entered into a valid contract to form a joint venture. The Clarks and Vargo

limited their cooperative efforts to C&C Grocery. The Clarks provided the land on which to build the grocery and knowledge of the grocery business. Vargo provided capital. All three worked equally at the store.

The Clarks correctly assert that they did not agree on or ever draw salaries. However, all parties testified that they discussed the division of the grocery business. The Clarks testified that each of the members was to have one third of the grocery, while Vargo testified that she was to receive one half of the grocery. A joint venture does not require that the parties agree on salaries, only that they have an expectation in the profits. Thus, the record shows that the Clarks and Vargo discussed how they would divide the business and the profits. Their testimony conflicted as to what proportion each party would receive. From these facts, the trial court could reasonably infer that the parties intended to share in the business and its losses and gains, in equal half shares. See *Kahle, supra.*

Therefore, we overrule the Clarks' first assignment of error.

## III

In their second assignment of error, the Clarks argue that the trial court erred in dividing the assets of the joint venture because the Clarks never intended to include the real estate as an asset of the joint venture. Alternatively, the Clarks argue that the agreement for the land to become part of the joint venture does not comply with the Statute of Frauds.

The intent of the parties determines what property shall be considered the property of the joint venture. See *Goepper v. Kinsinger* (1883), 39 Ohio St. 429. The mere fact that property is used for joint adventure purposes does not establish it as joint venture property. *Id.; Speelman v. Speelman* (Feb. 23, 1977), Wayne App. No. 1460, unreported.

Wayne testified that he did not enter into a formal written agreement with Vargo because he wanted to retain the six-acre tract solely as his own and he never intended to contribute it to the business. However, the Clarks wanted to use the land to build the store but lacked the necessary capital for construction. Vargo contributed the funds that the Clarks deposited into the C&C Grocery account and that eventually paid for substantial portions of C&C Grocery and its inventory. Vargo moved to the Clarks' property and worked in the grocery store equally with the Clarks. The Clarks and Vargo testified that they intended for Vargo to receive a portion of the store; however, they disagreed as to her percentage. Under these surrounding facts and circumstances, we find competent, credible evidence to support the trial court's finding that the Clarks

intended to contribute their land to the joint venture in return for Vargo's contribution of capital.

The Clarks assert that even if competent, credible evidence supports the trial court's finding that they intended to contribute their land to the joint venture, the Statute of Frauds bars the enforcement of an oral conveyance of an interest in real estate.

Ohio's version of the Statute of Frauds states that "[n]o action shall be brought whereby to charge the defendant * * * upon a contract or sale of lands, * * * or [an] interest in [land] * * * unless the agreement * * * is in writing and signed by the party to be charged therewith or [his authorized agent]." R.C. 1335.05. A court may still enforce an oral agreement to transfer real estate if the parties have partially or completely performed the agreement. *Cowie v. Cent. Trust Co.* (1939), 28 Ohio Law Abs. 536,

Here, Vargo sent the Clarks money to deposit into a C&C Grocery account at the bank. Vargo quit her job and moved from Michigan to Ohio to live with the Clarks. She provided substantial sums of money to complete C&C Grocery, took part in its actual construction, and purchased inventory and equipment. The Clarks provided the real estate for the construction of the grocery and knowledge of the grocery business. Once the store opened, the Clarks and Vargo worked equally in running the store. The Clarks and Vargo built C&C Grocery on the Clarks' land and paid for it largely through funds from the C&C Grocery account provided by Vargo. Without Vargo's contributions and actions, the joint enterprise would not exist.

Therefore, we find competent, credible evidence that the performance of Vargo and the Clarks took the transfer of the real estate to the joint venture outside the purview of the Statute of Frauds. The property being titled only in the Clarks' name does not preclude Vargo from having an interest in the improvements if it is owned as a joint-venture asset and she has an interest in the joint venture. See *State ex. rel. Ross v. O'Grady* (Sept. 27, 1994), Franklin App. No. 94APD03–443, unreported, 1994 WL 532056, referring to R.C. 1775.09(C).

Accordingly, we overrule the Clarks' second assignment of error.

## IV

In their third assignment of error, the Clarks argue that the trial court erred in failing to account for the debt incurred by the Clarks when they figured the losses of the joint venture. We agree. Nancy Clark testified that they borrowed $22,000 from American General and $35,000 from Wayne's father in exchange for a mortgage on their property. We find competent, credible evidence that the Clarks incurred financial debts in furtherance of the joint venture. The trial

court failed to take these debts into account when dividing the debts and assets of the joint venture. Therefore, we sustain the Clarks' third assignment of error and remand this case to the trial court to determine the division of debts incurred by the Clarks in furtherance of the joint venture.

## V

In their last assignment of error, the Clarks argue that the trial court erred in holding them liable to Vargo because courts cannot imply a service contract between family members. The Clarks correctly state that courts will not find an implied-in-law contract where one family member provides services for another family member in expectation of payment. *Hinkle v. Sage* (1902), 67 Ohio St. 256, 65 N.E. 999, paragraphs one and two of the syllabus; *Sabin v. Graves, supra,* 86 Ohio App.3d at 633, 621 N.E.2d at 751–752; *Kroeger v. Ryder* (1993), 86 Ohio App.3d 438, 444, 621 N.E.2d 534, 537–538. Under the family service rule, the general inference or presumption that rendering services brings forth an obligation to pay compensation is replaced by the inference or presumption that rendering services between family members is gratuitous. *Kroeger* at 444, 621 N.E.2d at 537–538, citing *Merrick v. Ditzler* (1915), 91 Ohio St. 256, 263, 110 N.E. 493, 495. Thus, in order to enforce the agreement, the party must present an express contract or clear and convincing parol evidence. *Id.*

Here, however, the monetary contributions provided by Vargo to C&C Grocery do not constitute "services," and, therefore, *Hinkle* is not applicable here. Furthermore, we found in the Clarks' first assignment of error that the Clarks and Vargo formed a joint venture through a contract implied in fact. The mere fact that the Clarks are related to Vargo does not remove their contractual obligations to her. *Hinkle* does not support the notion that implied-in-fact contracts cannot exist between family members. Accordingly, we overrule the Clarks' fourth assignment of error.

## VI

In conclusion, we find competent, credible evidence that the Clarks and Vargo formed a joint venture. We also find that the record contains competent, credible evidence that the Clarks intended to pass title of the land on which C&C Grocery sits to the joint venture. We also find that the trial court erred in failing to consider the monetary debts incurred by the Clarks in dividing the debts and assets of the joint venture. Last, we find that the trial court did not err in implying a contract between the Clarks and Vargo because the contract did not involve services.

Accordingly, we affirm in part and reverse in part the judgment of the trial court and remand this case to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

STEPENSON, P.J., concurs.

HARSHA, J., concurs in judgment only.