Appellant, Mr. James Cominsky, appeals the judgment entry of the Lake County Court of Common Pleas, in which certain sums of money were determined to be owed to appellees, Diane Malner ("Malner"), and Mr. and Mrs. Aljancic ("the Aljancics"), Malner's parents. For the reasons advanced below, we affirm.
It must be noted at the outset that the trial court had before it a very difficult case to adjudicate because the parties had intertwined their financial dealings without any definitive agreement or writing declaring goals or objectives.
On November 20, 1997, appellant filed a second amended complaint setting forth nine separate counts. After a trial was held in this matter, the trial court issued a judgment entry in which a lengthy recitation of the findings of fact was conveyed. In that judgment entry, the trial court found that in 1985, Malner was a widow with three minor children, while appellant was divorced and had two minor children. During that time, appellant was unemployed and possessed no funds to pay past or current child support to his former wife.
After dating for several months, appellant and Malner began living together in Malner's home. Improvements to her home were made to accommodate appellant's children. Importantly, throughout their relationship, appellant and Malner did not have a specific oral or written agreement concerning how to handle their joint assets. There also was no agreement concerning their goals or objectives. Thus, their affairs were handled according to the demands of the moment.
In 1987, Malner purchased a dump truck for $55,000 and created a trucking company in order to supply appellant with employment. In order to create the trucking company, Malner borrowed $30,000 from a lending institution and $25,000 from the Aljancics. According to tax returns, appellant was first hired as an employee and then as a subcontractor for the trucking company, which lasted until 1993, when the truck loan was paid and title was transferred to appellant. There was no consideration for the transfer to appellant.
In 1989, appellant and Malner purchased 22.39 acres for the sum of $95,000. The Aljancics provided one-half the purchase price, while appellant and Malner supplied the remainder. Appellant's and Malner's $47,500 contribution consisted of a loan from the Aljancics in the amount of $22,500 and $25,000 in cash from their own assets. The Aljancics were not then identified as co-owners of the property.
During the summer of 1989, the property began being developed. In order to facilitate the building of houses on the property, the Aljancics purchased a bulldozer for $20,000. Appellant was supposed to pay for the maintenance of the bulldozer. The Aljancics also incurred various other costs associated with the land development.
In 1991, appellant and Malner formed a corporation called American Cherished Homes, Inc. Appellant was fifty-one percent owner and Malner was a forty-nine percent owner. The corporation was formed for the purpose of constructing the three homes to be built on the property, and existed until 1996, when the corporation was dissolved.
In October 1991, 5.011 acres of the property were deeded to the Aljancics so that they could build a home. The house was completed in 1992, and is identified as 10500 S.R. 86. Appellant built the home in order to gain experience in contracting. He was to build the home at cost.
In May 1993, appellant and Malner decided to build a house for investment purposes on one of the lots, identified as 9250 S.R. 86. Because the home would cost approximately $183,000 to build, Malner obtained a loan in the amount of $70,000, which was secured by a mortgage on her residence. In November 1993, Malner sold her home for $99,000. The mortgage of her home was then paid off. Malner then borrowed $83,500 from the Aljancics to cover construction costs at 9250 S.R. 86, which is where appellant and she lived until the property was sold in January 1996 for $260,000.
In November 1993, appellant and Malner began construction of a third house on the rear portion of the property. That portion of property consisted of 9.89 acres and was identified as 11000 S.R. 86. The house was completed in January 1996. The following sums of money were applied to the construction of the house at 11000 S.R. 86: (1) $142,000 of a total $201,000 appellant and Malner borrowed from Cherished American Homes, Inc.; (2) $60,000 appellant and Malner borrowed from the Aljancics in a series of transactions in late 1994; (3) $10,000 Malner borrowed from her credit union; (4) $40,000 appellant and Malner borrowed from the Aljancics in February 1996, after construction was completed to defray construction costs; and (5) $50,000 of a $64,000 first mortgage made on the property with Union Federal. Thus, the total construction cost for the house was $302,000.
Appellant and Malner transferred the deed on the remaining 5.801 acres to the Aljancics in December 1995. Consequently, the Aljancics held title to 10.812 acres, while appellant and Malner held 9.89 acres. The remaining 1.688 acres was transferred to the purchaser of the property at 9250 Painesville-Warren Road in November 1995.
Finally, in April 1997, appellant and Malner parted and appellant moved out of the residence at 11000 S.R. 86. At the time of departing, appellant removed household furnishings, the bulldozer, tractor, backhoe, and a dump truck from the property. The bulldozer was sold for $11,000. Appellant retained the tractor, backhoe, and dump truck, which have values in the amounts of $8,000, $6,000, and $15,000, respectively. Malner continued to reside at the home and the Aljancics continued to reside at 10500 S.R. 86.
In the trial court's October 8, 1998 judgment entry, it was determined that appellant and Malner share a one-half interest in the property identified as 11000 S.R. 86 and recorded as 11770 S.R. 86. The lower court then partitioned the property pursuant to R.C. 5307.04 and appointed commissioners to impartially view and appraise the property in accordance with R.C. 5307.06, which was eventually sold at a sheriff's sale on January 19, 1999. The trial court dismissed counts two, three, four, and five of appellant's second amended complaint. Those counts were claims for unjust enrichment (counts two and three); breach of contract (count four); and an action to quiet title concerning the tractor, backhoe, and bulldozer (count five). Count six, malicious prosecution; count seven, abuse of process; count eight, slander; and count nine, intentional infliction of emotion distress, were not addressed in the lower court's October 8, 1998 judgment entry.
The lower court also concluded that judgment should be rendered against appellant and in favor of Malner in the amount of $123,238.86. Also, judgment was rendered in favor of the Aljancics on their counterclaim against appellant and cross-claim against Malner, jointly and severally, in the sum of $111,238. Finally, judgment was rendered against appellant and in favor of the Aljancics on their counterclaim in the amount of $18,000.
Appellant now timely appeals raising the following assignments of error:
 "[1.] [The] trial court erred to appellant's prejudice in applying the law to the facts of this case.
 "[2.] [The] trial court failed to consider relevant evidence in apportioning the assets and liabilities of the parties.
 "[3.] [The] trial court erred in accepting testimony from Diane Malner as true without assessing her credibility.
 "[4.] [The] trial court erred in refusing to admit the testimony of appellant's expert.
 "[5.] [The] trial court rendered arbitrary evidentiary rulings which constituted an abuse of discretion.
 "[6.] [The] trial court erred in directing a verdict on the claim of malicious prosecution.
 "[7.] [The] trial court erred in directing a verdict on the claim of abuse of process.
 "[8.] [The] trial court erred in directing a verdict on the claim of intentional infliction of emotional distress.
 "[9.] [The] trial court erred in striking appellant's pro se filings and prohibiting appellant from representing himself pro se [sic].
 "[10.] [The] trial court erred in denying appellant's motion to conform the pleadings to the evidence."
Within his first assignment of error, appellant raises two issues. First, that he was entitled to a greater share of the assets resulting from his business relationship with Malner. Second, that the Aljacics were unjustly enriched at his expense.
With respect to the first issue, appellant characterizes his business relationship with Malner as a joint venture. The trial court determined that this business relationship was a partnership. The rule in Ohio is that partnership law governs joint ventures. Vargo v. Clark (1998),128 Ohio App.3d 589, 595, citing Al Johnson Constr. Co. v. Kosydar
(1975), 42 Ohio St.2d 29, 32. See, also, Bennett v. Sinclair RefiningCo. (1944), 144 Ohio St. 139, 151. Since partnership law would apply to either a joint venture or a partnership, this court will simply treat the business entity formed by appellant and Malner as a partnership for the purposes of this opinion.
In his brief, appellant refers to the "years of labor" he invested in his partnership with Malner, and indicates that he believes he should be compensated for that labor in the division of the partnership assets. However, R.C. 1775.17 states in part that "[n]o partner is entitled to remuneration for acting in the partnership business * * *." Appellant has provided no evidence of a contract that would entitle him to recover for services rendered, nor has he cited any law that would support that argument. Therefore, the trial court properly determined that appellant is not entitled to any compensation for the labor he contributed to the development of the property owned by the partnership. Furthermore, if appellant were to receive compensation for services provided to the partnership, the value of his services would be offset by the value of the services provided by Malner, a fact which appellant conveniently ignores in his brief.
Appellant also makes note of his "substantial contributions * * * both financial and through his labor, to the [partnership]", but fails to specifically identify any such financial contributions. Further, the record indicates that appellant had no assets prior to meeting Malner and that their assets were generally commingled. In view of these facts, it was not unreasonable for the trial court to determine that appellant made no significant, independent financial contributions to the partnership that should have been factored into the trial court's judgment entry, particularly when one considers the convoluted nature of the financial dealings between appellant, Malner and the Aljancics. Appellant also contends that if we uphold the trial court's decision, the Aljancics will have been unjustly enriched at his expense. The trial court determined that the partnership of appellant and Malner owes the Aljancik's $111,238 for loans made to the partnership. Appellant argues that in reaching that decision, the trial court failed to take into account the value of labor and services appellant provided in the construction of the Aljancics' house. However, it is important to note that the Aljancics were not part of the partnership. They were at best, investors. And, it is clear that the loans from the Aljancics were negotiated by the parties. The money did not come without "strings" attached.
The elements of unjust enrichment are "`(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ("unjust enrichment").'" Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179,183, citing Hummel v. Hummel (1938), 133 Ohio St. 520, 525. In the instant case, it was understood that appellant would serve as general contractor for the construction of a home for the Aljancics in order to gain experience in the construction business and that he would receive no monetary compensation. While there was a benefit conferred upon the Aljancics in the form of appellant's labor and services, there was also a benefit conferred upon appellant in that he gained experience as a general contractor. Thus, there was mutual consideration. If the Aljancics had not agreed to take an enormous risk and pay all of the costs arising from the construction of the house, the house never would have been built and appellant would not have had the opportunity to work as a general contractor. Therefore, under the circumstances, it was not unjust for the Aljancics to retain the bargained for benefit of appellant's labor and services without providing him compensation beyond the experience he gained as a general contractor. We note that appellant failed to make this claim until six years after the house had been turned over to the Aljancics. For the foregoing reasons, appellant's first assignment of error is not well-taken.
In his second assignment of error, appellant claims that the trial court failed to consider relevant evidence in apportioning the assets and liabilities of the parties. Under this rubric, appellant rehashes his argument that the Aljancics were unjustly enriched at his expense, which we once again reject. Given the facts and circumstances of this case, including the lack of any sort of written agreement, this court is satisfied with the financial calculations made by the trial court. Appellant's second assignment of error is not well-taken.
In his third assignment of error, appellant states that the trial court erred in accepting the testimony of Malner without first, assessing her credibility. In making this argument, appellant relies on the fact that Malner testified inconsistently as to whether she owned two companies. The mere fact that Malner's testimony was inconsistent does not mean that the trial court failed to assess her credibility as a witness. Rather, the trial court might have determined that, in spite of inconsistencies with respect to that one aspect of her testimony, Malner's testimony as a whole was credible. In general, it is not the responsibility of a reviewing court to weigh the credibility of witnesses and we are "obligated to give due deference to the trial court in these matters."Castle v. Daniels (1984), 16 Ohio App.3d 209, 212. Therefore, this court will not reverse a trial court's decision to admit the testimony of a witness based on evidence of a single inconsistency in her testimony. Appellant's third assignment of error is not well-taken.
In the fourth assignment of error, appellant contends that the trial court erred in excluding the testimony of his expert witness, Alan Rattray ("Rattray"). Rattray would have testified to the value of services performed by appellant. Specifically, the value of appellant's excavation work. As we stated previously, the value of appellant's services is not at issue or relevant in this case. Therefore, even if the trial court erred in excluding Rattray's testimony, it would have been harmless error. Appellant's fourth assignment of error is not well-taken.
In the fifth assignment of error, appellant avers that the trial court rendered arbitrary evidentiary rulings, which constituted an abuse of discretion. Specifically, appellant states that the trial court demonstrated favoritism from its rulings. While appellant has a laundry list of complaints with respect to various evidentiary matters, he has presented no evidence that the trial court abused its discretion in rendering those decisions. Appellant's fifth assignment of error is not well-taken.
Appellant's sixth, seventh and eighth assignments of error will not be addressed by this court. With respect to these assignments of error, appellant has failed to comply with App.R. 16(A)(7), which requires appellant to include citations to authorities, statutes and parts of the record on which he relies to advance his arguments as to his assignments of error. Appellant has done nothing more than state the elements of a claim for malicious prosecution and the tort of abuse of process. It also appears that he has failed to provide this court with a copy of the relevant judgment entries and copies of the relevant motions. In addition, he has failed to cite to any specific portion of the trial transcript where the issues raised in these assignments of error were resolved. Instead, he has left it to this court to wade through three volumes of transcripts and attempt to construct a legal argument on his behalf. It is not the duty of this court to search the record for material or locate authority to support an alleged error. Such an expedition would amount to a utilization of this court's resources on an exercise that was appellant's responsibility to complete, and would be manifestly unfair to the opposing parties. See Doody v. Centerior EnergyCorp. (May 19, 2000), Lake App. No. 98-L-235, unreported, at 4, 2000 WL 655011, citing Quinn v. Quinn (Dec. 17, 1999), Geauga App. No. 98-G-2185, unreported, 1999 WL 1313621.
In the ninth assignment of error, appellant states that the lower court erred in striking his pro se filings and prohibiting him from representing himself pro se. Appellant asserts that the trial court's decision caused him extreme prejudice. However, in advancing this assignment of error, appellant has failed to articulate how and why such a decision caused him extreme prejudice. This court cannot detect any cognizable harm suffered by appellant as a result of the trial court's ruling.
Additionally, in striking appellant's pro se motions, the trial court, in an October 23, 1998 judgment entry, noted that appellant was under a restraining order to prevent his contact with the court or its staff due to his volatile manner and threats of violence he had made against various parties to this case, his own counsel and opposing counsel. This court held in In re: Bowens (Nov. 9, 1995), Ashtabula App. Nos. 92-A-1711, 92-A-1717, unreported, at 2, 1995 WL 803811, that "a trial court may terminate self-representation where the individual deliberately engages in serious and obstructionist misconduct." In view of appellant's efforts to intimidate the trial court, the trial court was well within its rights to deny him the right to represent himself prose. Thus, appellant's ninth assignment of error is not well-taken.
In the tenth assignment of error, appellant contends that the trial court erred in denying his motion to conform the pleadings to the evidence concerning his attempt to amend the pleadings to include a claim for a contract implied in law. "The decision to grant or deny a Civ.R. 15(B) motion to amend pleadings to conform to the evidence is within the sound discretion of the trial court. Such discretion will not be disturbed in the absence of `gross abuse' by the trial court."Northfield Park Assoc. v. Northeast Ohio Harness (1987), 36 Ohio App.3d 14,24, citing Spisak v. McDole (1984), 15 Ohio St.3d 62, 63. The trial court did not abuse its discretion in denying appellant's motion to amend the pleadings due to its lack of timeliness. Therefore, appellant's tenth assignment of error is not well-taken.
For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.
 ___________________________ DONOFRIO, J., Ret.
CHRISTLEY, P.J., NADER, J., concur.