OPINION
{¶ 1} Plaintiff-appellant, Peter DiNunzio, appeals the judgment of the Lake County Court of Common Pleas, finding that the parties had an oral agreement granting a constructive trust in favor of defendant-appellee, Diana Murray, for certain real estate in Mentor, Ohio. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} DiNunzio and Murray are brother and sister. The case sub judice reflects the unfortunate circumstances which often arise when people fail to reduce their agreements to writing. As might well be expected in such matters, particularly those among family members, many of the facts of this case are in dispute. The central issue before this court turns on the nature of the oral arrangement, which both parties acknowledge existed. The relevant facts are as follows:
 {¶ 3} DiNunzio, and his cousin, John Ciancibello, were principals in JP Parntership, a company in the business of building and developing homes. JP purchased two adjoining lots located in Mentor, Ohio, for the purchase of constructing two single-family homes for resale. Construction began on the homes in 1992. During the time between the purchase of the land and the eventual completion of the homes, Murray, who had previously resided in Cleveland, expressed an interest in moving to the suburbs with her family, and orally agreed with DiNunzio that she would occupy one of the homes once it was completed. The home Murray eventually occupied, a three-bedroom home, located at 5106 Forest Road, in Mentor, Ohio, is the subject property of this dispute.
 {¶ 4} While the home was under construction, Murray was presented with certain options with respect to completing the construction of the house, including the option to choose and/or upgrade certain features of the home, including linoleum, kitchen cabinets, roofing and siding colors, appliances, bathroom fixtures, additional walls, automatic garage door opener, extra insulation, central air conditioning, upgraded carpeting, and ceramic tile. On August 3, 1992, seven months before taking possession of the home, Murray made a payment of $7,000 to DiNunzio, which she characterized as a down payment towards purchase. DiNunzio testified at trial that this amount was not a downpayment but was for the cost of the air conditioner and other extra-cost upgrades Murray requested, which were not part of original plans for the home, and which he stated were "depreciable items" which would not add extra value to the home if it were resold. Evidence adduced at trial indicated that Murray paid out of her funds for the ceramic tile in the amount of $342.50. There was also evidence adduced at trial that Murray and her former husband, Charles, provided labor by painting some of the rooms prior to occupying the home.
 {¶ 5} When the home was completed in March of 1993, Murray and her family took possession of 5106 Forest Road. In February of 1993, the other property at 5110 Forest Road was sold to an unrelated party for $84,000. The partners of JP decided to split the profits on the homes. Ciancibello received the profit from the sale of 5110 Forest Road. JP transferred title to the subject property to DiNunzio via quit-claim deed in May of 1993, so that he would personally receive payments pursuant to his arrangement with Murray.
 {¶ 6} In October 1993, DiNunzio took out an adjustable rate loan in the amount of $61,800, which was secured by a mortgage on the subject property. In November 1993, in accordance with their oral arrangement, Murray began making monthly payments, ranging between $405 and $605, which equaled the monthly average for the mortgage payment, insurance, and taxes. The evidence shows that Murray continued to make all of these payments in a timely fashion as agreed. In addition, both parties agreed that Murray was responsible for the cost of all repairs on the home as necessary. There was proof adduced at trial that subsequent to taking possession of the home, Murray paid $90 for repairs to the furnace, and that she and Charles made improvements to the property, by building a $1,000 fence at their own expense, for which Charles, a fence installer by trade, provided the labor.
 {¶ 7} During the nine years Murray occupied the property prior to the filing of the instant action, DiNunzio retained title for the subject property in his name. Beginning in April 1994, Murray began to complain to DiNunzio on a yearly basis about this arrangement, since she was unable to deduct from her income taxes the property tax and interest payments made on the home. This remained a significant source of contention until the filing of the instant action.
 {¶ 8} In 1999, after growing impatient with this arrangement, Murray approached DiNunzio to inquire what she might do to have title eventually transferred to her and Charles. DiNunzio stated that she would need to pay him $20,000 for his "equity" in the house, as well as pay off the remainder of the mortgage balance. DiNunzio claims that at this time, he told Murray she would then need to pay him the fair market value at the time of this transfer, which he estimated would be $120,000, and Murray would then be credited for the payments she had made, which both parties agreed would total $88,600, which was made up of the $20,000 "equity" payment, the $7,000 Murray paid prior to taking possession of the property, and $61,800, the total principal amount due on the mortgage loan. Murray contends that the $88,600 represented the total purchase price as agreed upon by the parties. Shortly thereafter, the evidence shows that Murray began to make payments toward the $20,000 equity balance, eventually making four payments totaling $6,500.
 {¶ 9} In December of 2001, Murray filed for divorce from her husband, Charles, and had him removed from the property. DiNunzio went to the property with Charles when he collected his personal effects. Thereafter, Charles went to stay at the home where DiNunzio was living with his parents. At trial, DiNunzio admitted that some time between December 21 and December 24, 2001, he served Murray a notice to vacate the premises, but eventually did not carry through with the eviction proceedings related to this notice.
 {¶ 10} However, on December 29, 2001, DiNunzio delivered to Murray a 30-day notice pursuant to R.C. 5321.17(B), informing Murray that her lease was being terminated and requesting she vacate the premises. On February 3, 2002, Murray filed an affidavit of facts with the Lake County Recorder's office, averring that she had legal rights in the subject property pursuant to an oral trust agreement between her and DiNunzio, and averring that all financial obligations under the oral arrangement were current as of February 1, 2002. Evidence adduced at trial indicated that after filing suit, DiNunzio quit forwarding the mortgage, tax and insurance billings to Murray, and began to make these payments himself. Despite this, Murray continued to make mortgage payments to Ohio Savings, which, because they were considered duplicate payments, were applied against the outstanding principal balance.
 {¶ 11} On April 2, 2002, DiNunzio filed a joint complaint in forcible entry and detainer and for declaratory judgment action in the Lake County Court of Common Pleas. By mutual stipulation of the parties, Murray was granted leave to plead and filed her answer and counterclaim, alleging that there was an oral trust agreement between the parties and requesting that the trial court validate and affirm the terms and conditions of their agreement and declare that she be allowed to remain on the premises and make all required mortgage, insurance and tax payments, until such time as and title could be conveyed.
 {¶ 12} A bench trial was held in the Lake County Court of Common Pleas. Trial began on November 15, 2002, was reconvened on March 15, 2003, and finally concluded on May 9, 2003.
 {¶ 13} On November 25, 2003, the trial court issued a seven-page judgment entry, including findings of fact and conclusions of law, and concluded that "a constructive trust existed between the parties" and that DiNunzio "would be unjustly enriched if he were allowed to retain ownership of the home located at 5106 Forest Road in Mentor, Ohio." The court then declared that Murray "shall be permitted to remain on the premises and continue to make all of the required mortgage, insurance and tax payments." The court further ordered that Murray "shall pay Plaintiff the balance of Thirteen Thousand Five Hundred Dollars ($13,500) minus any tax credits received by the Plaintiff for the years 1993 through the present for mortgage interest paid by Diana Murray." Murray was ordered to complete these payments within two years from the date of the judgment, and since DiNunzio was in the process of amending his tax returns, the court ordered him to provide Murray with tax return information to substantiate the tax credits for the years 1993 to the present. The court then ordered that once the $13,500 balance was paid, Murray was to assume the mortgage currently held by DiNunzio, and title to the subject property would be conveyed to her. Finally, the court ordered that any payments DiNunzio may have made "contrary to the oral trust agreement" and in an "attempt to unjustly gain control of the property," would not be reimbursed.
 {¶ 14} From this judgment, DiNunzio filed a timely notice of appeal, asserting a single assignment of error:
 {¶ 15} "The trial court erred in finding that appellant held the property in constructive trust for appellee and such finding is against the manifest weight of the evidence as a matter of law."
 {¶ 16} Although the trial court held that a constructive trust existed, the parties in actuality argue two contractual theories at trial and on appeal: The first argument deals with whether a constructive trust existed. The second argument involves whether an implied-in-fact contract for the sale of the property existed.
 {¶ 17} Three types of contractual obligations have been historically recognized by Ohio courts: express, implied in fact, and implied in law. Vargo v. Clark, (1998),128 Ohio App. 3d 589, 595, citing Legros v. Tarr (1989), 44 Ohio St.3d 1, 6. Express contracts are those in which the parties assent to the terms actually expressed through the written offer and acceptance. Id. In an implied-in-fact contract, "the meeting of the minds is shown by the surrounding circumstances that demonstrate that a contract exists as a matter of tacit understanding." Id. Implied-in-law contracts are not in the nature of a true contract, but are rather quasi- or constructive contracts imposed by courts and based upon equitable principles, where "civil liability attaches by operation of law," if it would be unjust for one party to receive benefits that he is not entitled to retain. Id.
 {¶ 18} "In Ohio, a party seeking to enforce a constructive trust must establish the facts that give rise to such a trust by clear and convincing evidence." Concepcion v. Concepcion
(1999), 131 Ohio App.3d 271, 278. "Clear and convincing evidence is that measure or degree of proof which is more than a mere `preponderance of the evidence,' but * * * will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 19} While appellant's conduct did not warrant an application of the constructive trust doctrine based on fraud, the evidence in the record supports the finding of a constructive trust in this case because appellant would be unjustly enriched if he were allowed to retain ownership of the home under the circumstances of this case. Ferguson v. Owen (1984),9 Ohio St.3d 223, 226 ("A constructive trust is * * * an appropriate remedy against unjust enrichment."); see also V Scott on Trusts (3rd Ed. 1967) 3412, Section 462.
 {¶ 20} "A constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." Bilovocki v.Marimberga (1979), 62 Ohio App.2d 169, 171 (citation omitted). In this case, appellant essentially held an equitable lien on the property, even though title was in appellant's name. An equitable lien is a right to have property held or applied to assume payment of a particular debt. Clapp v. Huron County Banking Co.
(1893), 50 Ohio St. 528, 536 (citation omitted). Appellant was subject to an equitable duty to convey title to the home to appellee upon appellee's completion of payment to appellant.
 {¶ 21} Moreover, evidence adduced at trial shows a strong likelihood that DiNunzio engaged in active misconduct with respect to the subject property, which would make his retention of the property unjust in this case. First, there was evidence which tended to show that DiNunzio made misrepresentations on his mortgage loan application in which he indicated to the lender that he resided at the subject property, and that it was owner-occupied. DiNunzio also made this same representation on the mortgage note itself. In addition, DiNunzio admitted that the $2500 payments he received from Murray for his "equity" in the subject property were not reported on his income tax returns, and that the monthly mortgage payments made by Murray were reported on his income taxes as a "reimbursement," rather than being reported as rental income, when such treatment would have been consistent with a rental contract. Instead, there was evidence that DiNunzio may have taken an improper income tax benefit for mortgage loan interest and insurance which would have properly belonged to Murray. All of these circumstances support the trial court's imposition a constructive trust in Murray's favor.
 {¶ 22} Based upon the foregoing, we conclude that the trial court's ruling based on a constructive trust is supported by the evidence. Appellant's assignment of error is without merit.
 {¶ 23} Even if the constructive trust doctrine were not to apply in this case, the trial court's ruling in favor of appellee is correct based on a contractual analysis and the part performance exception to the Statute of Frauds.
 {¶ 24} Under Ohio's Statute of Frauds, "[n]o action shall be brought * * * upon a contract or sale of lands * * * or interestin or concerning them, * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith." R.C.1335.05; Vargo, 128 Ohio App.3d at 597. Since both parties agree that there was no written contract, the arrangement between them, whether characterized as a contract for sale, or a lease contract, was presumptively unactionable under the Statute of Frauds.
 {¶ 25} Nevertheless, "[a] court may still enforce an oral agreement to transfer real estate if the parties have partially or completely performed the agreement." Id. citing Cowie v. TheCentral Trust Co. (1939), 14 Ohio Op. 185, 1939 Ohio Misc. LEXIS 1098, at *3-*4. "In an action for specific enforcement of an oral contract for the sale of land, equity intervenes to render the statute of frauds inoperative only when a failure to enforce the contract will result in fraud or injury." Tier v. Singrey
(1951), 154 Ohio St. 521, 526. "To entitle one claiming to have purchased land to enforce an oral contract for the conveyance thereof, he must, in reliance on the promise, have performed acts which changed his position to his prejudice." Id. (citation omitted).
 {¶ 26} Moreover, acts in reliance on the alleged agreement must be unequivocal, exclusively referable to the agreement, and cause a change in position to the plaintiff's detriment which makes it "impossible or impractical to place the parties instatus quo." Delfino v. Paul Davies Chevrolet, Inc. (1965),2 Ohio St.2d 282, paragraph four of the syllabus.
 {¶ 27} "[T]he following are considered the requisite elements of proof to satisfy this doctrine:
 {¶ 28} "(1) the part performance by the plaintiff must be in pursuance to a contract and `reasonable reliance thereon';
 {¶ 29} "(2) the performance must be such that `the remedy of restitution is not reasonably adequate'; and
 {¶ 30} "(3) the performance must be `not readily explainable' except as to the existence of the oral contract." Rolland v.Biro (Nov. 18, 1982), 8th Dist. No. 44632, 1982 Ohio App. LEXIS 11699, at *10 (citation omitted). In Ohio, courts accept a combination of these elements in determining whether partial performance exists. Id. Possession is likewise an element in determining whether relief from the statute of frauds is appropriate, but it is not dispositive of the issue. Tier,154 Ohio St. at 526.
 {¶ 31} In civil cases, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v.Foley Const. Co. (1978), 54 Ohio St.2d 279, at the syllabus. In reviewing a manifest weight argument, "[t]he determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal." Seasons Coal Co., Inc. v. Cleveland
(1984), 10 Ohio St.3d 77, 81. Thus, there is a presumption that the findings of fact as determined by the trier of fact are correct. State ex rel. Pizza v. Strope (1990),54 Ohio St.3d 41, 46 (citation omitted).
 {¶ 32} After "careful consideration of the evidence presented as well as the veracity of the witnesses," the court made the following findings of fact: Prior to commencement of construction of 5106 Forest Road, Diana and Charles Murray made a $7,000 payment to DiNunzio. Pursuant to the agreement, Diana Murray paid the mortgage, taxes and insurance payments for a period of nine years and made other partial payments to DiNunzio according to their oral agreement. Diana and Charles Murray were involved in the construction of the home and produced evidence that they paid for some materials used in the construction of the home. Diana and Charles Murray made improvements to the premises and were responsible for all repairs on the home once it was completed. The court found these acts were inconsistent with a month-to-month oral tenancy and consistent with a contract to purchase.
 {¶ 33} The court accepted the testimony of Dr. Phillip Bouffard, a handwriting expert, to determine that the handwriting on a Mortgage Payment Inquiry Statement from Ohio Savings Bank had a high probability of being DiNunzio's. The court determined that this writing memorialized the parties agreement as to the full purchase price of the home of $88,600. This amount was consistent with the sale price of $84,000 that JP received for the companion property. The evidence also showed that Murray had paid $6,500 toward the $20,000 "equity" balance which DiNunzio admitted at trial was a necessary prerequisite for a transfer of title to the property. Based upon the trial court's findings of fact, we conclude that competent, credible evidence existed to support a finding of part performance of an oral contract.
 {¶ 34} DiNunzio's sole assignment of error is without merit. The judgment of the Lake County Court of Common Pleas is affirmed.
Ford, P.J., Rice, J., concur.