PAGE, APPELLANT, *v.* THE PROVIDENT SAVINGS BANK & TRUST CO., EXR., APPELLEE.

(No. 7904—Decided November 22, 1954.)

*Messrs. Aug, Elder & Rielly,* for appellant.
*Mr. Walter K. Sibbald,* for appellee.

MATTHEWS, P. J.  This case came on for trial in the Common Pleas Court upon an amended petition, the answer thereto and a reply.  At the conclusion of the plaintiff's evidence, the court sustained the defendant's motion for an instructed verdict, and, thereafter, overruled the plaintiff's motion for a new trial and entered judgment on the verdict for the defendant. It is from that judgment that this appeal on questions of law was taken.

It is admitted that the plaintiff, within the time allowed by law, presented to the defendant as executor of the estate of Thomas L. Thayer, deceased, a duly verified claim for $10,000 upon a check or bill of exchange, and that the defendant within two days of its presentation, rejected it.  The action is upon that rejected claim.

The evidence shows that the plaintiff and her husband were friends of Thomas L. Thayer and his wife, Elizabeth, from 1937 or 1938 to the time of the deaths of Thomas L. Thayer and Elizabeth Thayer; and that during most of that time they were neighbors.  Their residence lots adjoined in the rear.  Commencing in

1943, when Mrs. Thayer was injured in an automobile accident, and from that time on for the rest of her life, her health was poor. Her health became such in 1948 that trained nurses had to attend her from that time until her death. She died in January of 1950. There is also evidence that Mr. Thayer's health was not robust.

There is evidence that during the period from 1943 to 1948, both inclusive, Mr. and Mrs. Thayer had no domestic employees as a part of their household. They endeavored to do the housework themselves, but found it burdensome. During all this time Mr. and Mrs. Thayer were customers of the plaintiff. Whether they paid the plaintiff for professional services does not appear. No claim therefor was presented.

By 1943, the plaintiff had developed the more or less regular habit of assisting them in taking care of their home and in taking prepared food to them at mealtime, and also bottles of wine at rather regular intervals. Perhaps, in the course of time, Mr. and Mrs. Thayer came to rely on the plaintiff's friendship. It is not clear on whose suggestion or initiative this practice originated. It was undoubtedly inspired by friendship and neighborliness in the beginning and without any thought of treating it as a business transaction. We find nothing in the evidence relating to the period from 1943 to 1948 from which we would be justified in inferring that the plaintiff expected to receive, or the Thayers expected to pay, a *quid pro quo*.

There is evidence that about 1940, Mrs. Thayer, in speaking of the plaintiff, in plaintiff's presence, said: "Oh, she has been so good to us, Ann, better than any relative we ever had," and, "you don't need to worry, you will be well taken care of when the time comes, for all you have done for us." That is the only suggestion of compensation during Mrs. Thayer's life-

time. Whether that compensation was to be in Mrs. Thayer's lifetime or by provision in her will cannot be determined from the language used. It was a voluntary statement, not suggested by any statement by plaintiff that she expected compensation. During all this time the plaintiff was engaged in operating a beauty shop or parlor, and, without doubt, devoted most of her time to that business.

It was not until after Mrs. Thayer's death that the first suggestion appears that the relation between the plaintiff and Mr. Thayer had been, or would be, governed by the rules of law relating to business transactions. On January 13, 1950, Thomas L. Thayer executed and delivered to the plaintiff a document, variously referred to as a check or bill of exchange, in the words and figures following:

"The Fifth Third Union Trust Co.

Cincinnati, Ohio, January 13, 1950

"Pay to the
Order of    pay to the order of Ann Page ..$10,000.00
Ten thousand ................00/          Dollars
"Not to be cashed untill
I pass away                    Thomas L. Thayer"

It is upon this document that the claim of the plaintiff is based.

The plaintiff's husband testified that "Mr. Thayer has told me a good many times that Ann had done more for them than anybody else and they don't know how they could have got along without her, and Mr. Thayer also said that they worshipped her and lots of time Mr. [Mrs.] Thayer called her her little sister"; and also that "He has often told me that Ann would be well taken care of and would be fully paid for everything she had done for him."

And, referring to a conversation with Mr. Thayer, he testified further: "Well, he said that Ann had al-

ways been so nice to him and he wanted Ann to be paid and he gave her the check and says she was well worth it and wanted her to have it.''

It would be impossible to make even a reasonable approximation of the time devoted by the plaintiff to the affairs of Mr. and Mrs. Thayer, or of the amount of food furnished. It is clear that during all the time from 1943 to 1948 she was in constant attendance at her place of business during business hours, and that the time she devoted to the affairs of Mr. and Mrs. Thayer was largely after business hours, or, if during business hours, when it would not unduly interfere with her activities as a beautician. Her attention to Mr. and Mrs. Thayer was sporadic, without continuity. There is no estimate even of the number of hours or days consumed. There was no estimate of the number of meals prepared or food and drink supplied. The testimony of the reasonable value of the services and food and drink was necessarily no more than a guess.

The first paragraph of the syllabus of the case of *Carlson* v. *Krantz,* 172 Minn., 242, 214 N. W., 928, as reported in 54 A. L. R., 545, is as follows:

''Even though services are rendered or acts done on request, there is no liability where the circumstances repel the inference that compensation was intended. So, when services are performed, acts done, or promises made solely for charitable purposes, and without the intention of assuming contractual obligation, the law will not imply such obligation.''

In the annotation to the foregoing case, at page 549, the general rule is stated as being:

''To render one liable as debtor under an implied promise, it must be shown not only that the services were valuable, but also that they were rendered under such circumstances as to raise the presumption that

the parties intended and understood that they were to be paid for, or at least, that the circumstances were such that a reasonable man, in the same situation as that of a person who receives and is benefited by them, would and ought to understand that compensation was to be paid for them.''

Many cases illustrating this rule are commented upon.

In 58 American Jurisprudence, 516, 517, Section 8, we find it stated that:

''No promise will be implied to pay for services rendered by one person for another when at the time of their rendition there was no intent to charge or expectation of payment, as where services are rendered from motives of friendliness, neighborliness, kindness, or charity. Assumpsit cannot be based on a spontaneous and unasked service, rendered through kind-ness or other motive, and not to be accounted for on the theory of an expectation of payment. This is merely a corollary of the general principle in the law of contracts that all contracts must be good or bad in their original creation, and must not depend on subsequent contingencies. Liability for services cannot hinge on whether the party chooses at a future date to make them a gift or a charge.

''* * *

''If services are rendered in reliance solely on the recipient's generosity, in expectation of a gift inter vivos or by will, but the person rendering the services is disappointed in his expectation, no action can be maintained for the value of the services. In the absence of fraud, mere ignorance on the part of a person rendering gratuitous services that the recipient is able to pay for them will not entitle him to compensation therefor.''

The relationship between the plaintiff and Mr. and

Mrs. Thayer began in a spirit of friendship and without any suggestion of commercialism, and that relationship continued to be controlled by that spirit until such time as the parties manifested an intent to change it. There must be evidence of that change. We fail to find any such evidence. We do find in the expression of Mrs. Thayer an appreciation of the acts of friendship by the plaintiff and an intention to reciprocate "when the time comes," but we fail to find any evidence from which a reasonable inference could be drawn that Mrs. Thayer intended to bind herself or her husband by contract to pay for the services which the plaintiff had or would perform.

Turning now to the statements made by Mr. Thayer, let us analyze them. He said at an unspecified time that "Ann would be well taken care of and would be fully paid for everything she had done for him." Can it be said that he thereby admitted a legal indebtedness—that he was bound to pay—and could be forced to pay? We cannot so construe it.

The check or bill of exchange that Mr. Thayer gave to plaintiff shortly after Mrs. Thayer's death does not admit an indebtedness. It is true that a negotiable instrument imports consideration and places the burden of proof upon a defendant. It is true also that the mere fact that an instrument is made payable upon or after death does not destroy its negotiability or make it testamentary in character. 7 American Jurisprudence, 873, Section 149. However, whether it is one or the other is dependent on the facts when the question arises between the original payee and the estate of the promissor, and that cannot be determined by clothing the promise in the form of a negotiable instrument.

In this case, the plaintiff assumed to prove the con-

sideration for which the check was given. In our judgment it showed that consideration was lacking and that the intent in giving the check was not to discharge an existing debt but rather to bestow a gratuity to take effect upon death, and that purpose must fail because it was testamentary in character and not executed with the formalities required by law.

We find no prejudicial error in the record.

The judgment is affirmed.

*Judgment affirmed.*

MATTHEWS, P. J., and HILDEBRANT, J., concur.