SABIN, Appellant,

v.

GRAVES, Exr., Appellee.

[Cite as *Sabin v. Graves* (1993), 86 Ohio App.3d 628.]

Court of Appeals of Ohio,
Ottawa County.

No. 92–OT–033.

Decided March 5, 1993.

*Douglas W. King* and *Thomas W. Heintschel,* for appellant.

*Douglas O. Meyer,* for appellee.

ABOOD, Judge.

This is an appeal from a summary judgment entered by the Ottawa County Court of Common Pleas in favor of defendant-appellee, Gene W. Graves, executor of the estate of Agnes Hellwig Dipman.

Appellant, Darrel B. Sabin, sets forth the following assignment of error:

"The trial curt erred in finding that no genuine issues of material fact existed as to Sabin's claims where the facts show that Sabin's claim was legitimate but the amount of the claim was in dispute."

This case arises out of appellee's rejection of appellant's claim for $68,880 against the estate of his deceased aunt, Agnes Hellwig Dipman, for money and services that he contributed toward the construction of an addition to decedent's home between the fall of 1982 and the spring of 1983.

The facts that are relevant to a determination of the issues raised by this appeal are as follows. Between 1974 and 1982, appellant rented the guest bedroom at his aunt's house in Martin, Ohio, on a part-time basis. In October 1982, appellant's aunt contracted with VanNess Construction Company to build an enclosed breezeway, connecting her home to her garage, and a two-room apartment off the breezeway. When the project was completed in the spring of 1983, appellant paid the cost of building the apartment and moved into it, where he remained without paying any further rent until sometime after his aunt's death on April 29, 1990. Thereafter, appellant submitted a claim against the estate in the amount of $68,880 for the costs and labor he contributed toward building the apartment. Appellee rejected the claim. On October 12, 1990, appellant filed a complaint in the Ottawa County Court of Common Pleas which alleged that, prior to the construction of the breezeway and apartment, his aunt had made him "aware that her Will provided that [he] would inherit the subject property from her estate upon her death"; that "[i]n reliance on this representation, [he] agreed in 1982 to proceed, partially at his own expense, with the project"; that he acted as general contractor on the project; and that he was seeking to recover the $68,880 on theories of contract and *quantum meruit.* On January 24, 1992, appellee filed a motion for summary judgment and, on February 26, 1992, appellant filed a response thereto.

The record that was before the trial court on summary judgment consisted of the pleadings, the depositions of appellant, appellee and decedent's niece and two other nephews, and various documents.

In his deposition, appellant testified that he saw his aunt's will "prior to the fall of 1982." He stated that he does not remember how close it was to when the project took place that his aunt showed him her will, or whether it was more or less than a year before. He stated, "I don't recall what possessed her to do it, but she said, here is my will, what do you think of it." He stated further that he is "quite sure" that he read the will at that time and that the will provided "that the house property was to be mine with some discount rate, I believe it was 80 percent." He also stated that his aunt "said one day, I guess I'll leave the house to you." As to that incident he testified as follows:

"Q. Do you remember when that was?

"A. No.

"Q. That was just out of the blue she told you that?

"A. That's what I recall, yeah.

"Q. Had the topic been raised at all?

"A. No.

"Q. What did you say?

"A. I said, fine, something to that effect."

When asked whether this conversation occurred "prior to the time that you actually discussed the breezeway project with her," he replied, "I think so, yes." Appellant testified further that during the course of the project there was a verbal agreement between him and his aunt on sharing the cost of the project but there was no agreement between them that he would act as a general contractor, and that he just assumed that job. He stated that, after the project was completed, he and his aunt exchanged proposed written contracts that dealt with how the costs of the project would be shared by them and how such costs would be recovered by appellant in the event that he would predecease his aunt or his aunt would evict him, die or sell the property. He stated further, however, that because they could not come to terms, his aunt said "she was going to drop the whole thing." He "[n]ever heard anything more or saw anything more," and none of the proposed contracts was ever executed. He then testified that, without his knowledge, his aunt changed her will.

Appellee testified that, under the decedent's last will, appellant did not receive preferential treatment in the disposition of her residence, but had to bid against the appraisal value of the property along with the other relatives.

In support of his sole assignment of error, appellant argues that (1) he had an "oral agreement for compensation and reimbursement" for the labor and money he expended on the improvement of the residence; (2) "[t]he record is replete with factual references which are more than sufficient to put into issue the existence of an implied contract between [him] and the Decedent"; (3) he "need not establish that a written agreement for repayment existed * * * in order to recover"; (4) there was evidence to place at issue the existence of "more than a mere expectation or hope of compensation through a Will of the Decedent"; (5) "[t]he existence of an express agreement * * * is not a prerequisite [to recovery] in this case"; and (6) "[e]ven if the facts do not support a contract implied in fact * * * [u]nder a quasi contract theory, recovery is available."

Appellee responds that (1) the expectation of a legacy does not give rise to liability; (2) "no obligation to pay for services rendered will be implied in favor of one who was a member of the family of the person for whom the services were rendered"; (3) the condition precedent to recovery under a *quantum meruit* theory is the existence of an express contract or binding promise; and (4) the benefits conferred upon appellant negate any claim of unjust enrichment.

Appellant replies that (1) appellee "cannot cite any portions of the record which establish as a matter of law that there was no oral agreement or understanding between [appellant] and the Decedent regarding * * * reimbursement for his contributions to the property"; (2) "[i]t was only after [appellant] was made aware of the option * * * under the * * * Will that he undertook [the project] in reliance on the agreement of the Decedent to continue to provide for him"; (3) "[t]he unexecuted draft agreements * * * clearly evidence that an oral agreement between the parties existed for reimbursement, the exact mechanics of which remained undecided"; and (4) whatever other benefits he received, he did not receive "the benefits of his contribution to the premises." Appellant does not argue that there was no family relationship between him and his aunt at the time he contributed toward the project.

In considering the parties' arguments, this court will first consider what appellant will be required to prove in order to recover in this case. In particular, we must examine the "family member" rule and its effect on the various contract theories advanced by appellant.

The "family member" rule is set forth in *Hinkle v. Sage* (1902), 67 Ohio St. 256, 65 N.E. 999, at the syllabus, and provides as follows:

"1. In an action to recover compensation for services, when it appears that the plaintiff was a member of the family of the person for whom the services were rendered, *no obligation to pay for the services will be implied;* and the plaintiff cannot recover in such case unless it be established that there was an *express* contract upon the one side to perform the services for compensation, and upon the other side to accept the services and pay for them.

"2. Such contract may be in writing or it may rest entirely in parol, and it may be proved by direct *or indirect* evidence; but to entitle the plaintiff to recover, the contract must be established by clear and unequivocal proof." (Emphasis added.)

Later, in *Merrick v. Ditzler* (1915), 91 Ohio St. 256, 110 N.E. 493, paragraph two of the syllabus, the Supreme Court of Ohio modified the rule as stated in the second paragraph of the *Hinkle* syllabus to "clear and *convincing* proof." (Emphasis added.)

Under this rule, the general inference or presumption that the rendering of services brings forth an obligation to pay compensation is replaced by the inference or presumption that the rendering of services between family members is gratuitous. *Merrick, supra,* at 263, 110 N.E. at 495; Annotation (1949), 7 A.L.R.2d 8, 12, Section 1.

As to the various classes of contracts under which appellant seeks recovery in this case, the Supreme Court of Ohio, in *Legros v. Tarr* (1989), 44 Ohio St.3d 1, 6–7, 540 N.E.2d 257, 263, explained that:

"[I]t is well-established that there are three classes of simple contracts: express, implied in fact, and implied in law. *Hummel v. Hummel* (1938), 133 Ohio St. 520, 525, 11 O.O. 221, 223, 14 N.E.2d 923, 925–926; *Rice v. Wheeling Dollar Savings & Trust* (1951), 155 Ohio St. 391, 44 O.O. 374, 99 N.E.2d 301. 'In express contracts the assent to its terms is actually expressed in offer and acceptance. In contract implied in fact the meeting of the minds, manifested in express contracts by offer and acceptance, is shown by the surrounding circumstances which made it inferable that the contract exists as a matter of tacit understanding. In contracts implied in law there is no meeting of the minds, but civil liability arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain and for which he may be made to respond to another in an action in the nature of assumpsit. Contracts implied in law are not true contracts; the relationship springing therefrom is not in a strict sense contractual but quasi-contractual or constructively contractual. In truth contracts implied in law are often called quasi contracts or constructive contracts. *Columbus Hocking Valley & Toledo Ry Co. v. Gaffney* [ (1901) ], 65 Ohio St., 104, 61 N.E., 152.' *Hummel, supra.*"

As to the effect that the family member rule has on contracts implied in law, clearly the shift in presumption accomplished by the family member rule generally precludes recovery for services rendered to one family member by another based on such a theory. *Hinkle, supra,* 67 Ohio St. at 262, 65 N.E. at 1000. The rule, however, does not preclude recovery by a family member in *quantum meruit* for services he rendered to another family member, based on a quasi-contract theory, where an unenforceable express oral contract to leave property by will is shown to exist. *Bemis v. Bemis* (1948), 83 Ohio App. 95, 101, 38 O.O. 197, 200, 82 N.E.2d 757, 760; *Ardinger v. Bell* (App.1934), 17 Ohio Law Abs. 438; *Martin v. Dickey* (App.1930), 9 Ohio Law Abs. 500; *Walters v. Heidy* (1913), 1 Ohio App. 66.

As to the effect that the family member rule has on contracts implied in fact: (1) in *Hinkle*, although the court in paragraph one of the syllabus limited recovery to "express" contracts, it explained that implied-in-fact contracts are nothing more than "[e]xpress contracts which are proved by the declarations and conduct of the parties and other circumstances * * *. [I]t is a misnomer to denominate [them] as * * * implied * * *." *Id.,* 67 Ohio St. at 263, 65 N.E. at 1001 (both are "actual" contracts); see, also, *Gaffney, supra,* 65 Ohio St. at 114–115, 61 N.E. at 153 (both are "true" contracts); *Lucas v. Constantini* (1983), 13 Ohio App.3d 367, 13 OBR 449, 469 N.E.2d 927; and (2) the court in *Hinkle* held

further at paragraph two of the syllabus that "[s]uch contract * * * may be proved by * * * indirect evidence * * *." Recovery for services rendered by one family member to another based on contract implied in fact is not, therefore, precluded under the family member rule.

Upon consideration of the foregoing, this court finds preliminarily that the effect that the family member rule has on appellant's various contract theories is to require him to establish, by clear and convincing proof, either by direct or indirect evidence, the existence of an actual contract between him and his deceased aunt under which he was to be compensated for his contributions to the project.

Since appellant continued to reside in the apartment until after his aunt's death, the issue that is determinative of appellant's sole assignment of error is whether there remains any genuine issue of material fact as to whether appellant and his deceased aunt reached an actual agreement "that [he] would inherit the subject property from her estate upon her death."

■ As to appellant's argument that appellee "cannot cite any portions of the record which establish as a matter of law that there was no oral agreement or understanding between [him] and the Decedent regarding * * * reimbursement for his contributions to the property," the party moving for summary judgment need not support his claim with evidence *negating* his opponent's claim. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273. He may simply point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554, 91 L.Ed.2d at 275. The burden is then upon the nonmoving party "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273; *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

■ The only evidence that appellant relies upon to support an actual agreement for him to inherit his aunt's property is (1) his testimony that his aunt showed him her will sometime prior to when he took part in the project, and (2) the unexecuted proposed written contracts. As to the will, there is no evidence in the record that when she showed appellant her will, she did so in exchange for a promise on his part to contribute to the project. In fact, appellant testified that he did not "recall what possessed her to do it." Whether or not appellant later subjectively relied upon what he read in the will in arriving at his decision to contribute to the project is irrelevant since subjective reliance, without mutual promises, amounts to no more than a mere expectation of a legacy or a gift. *Page v. Provident Savings Bank & Trust Co.* (1954), 98 Ohio App. 410, 57 O.O.

448, 130 N.E.2d 97; *Poorman v. Walker* (App.1942), 36 Ohio Law Abs. 458, 44 N.E.2d 143; *Anderson v. Houpt* (1932), 43 Ohio App. 538, 184 N.E. 29.

As to the unsigned written contract proposals, reasonable minds cannot infer from them that an actual contract or agreement existed for "reimbursement" leaving only the "exact mechanics" of that agreement to be worked out. "Reimbursement" is one of the "exact mechanics" to be agreed upon under the proposals and there is no evidence that the parties agreed to sever part from the rest. The failure to agree, therefore, is just that, a failure to agree.

Upon consideration of the entire record of proceedings that was before the trial court on summary judgment, and the law as set forth above, this court finds that there remains no genuine issue as to any material fact and, when construing the evidence most strongly in favor of appellant, reasonable minds could only conclude that appellant and his aunt did not come to an actual agreement that appellant would inherit his aunt's property upon her death in exchange for his contributions to the project.

Accordingly, appellant's sole assignment of error is not well taken.

*Judgment affirmed.*

GLASSER, P.J., and SHERCK, J., concur.