DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, MedCorp, Inc., appeals from a judgment entered in this case by the Toledo Municipal Court. For the reasons that follow, we affirm in part and reverse in part the judgment of the trial court.
 {¶ 2} On March 7, 2002, appellee, Veria Hailey, was involved in a car accident in Toledo, Ohio. A MedCorp unit was called to the scene to provide emergency services. MedCorp personnel assessed Hailey's condition and transported her to a hospital located approximately four miles away. Hailey was later billed $961 for the MedCorp services. Hailey believed the bill to be unreasonable and did not pay it. MedCorp eventually turned the bill over to a collection agency, and on October 21, 2003, the collection agency brought suit against Hailey for nonpayment of the charges. Hailey counterclaimed, challenging the amount of the bill. The suit was dismissed without prejudice when, on January 20, 2004, Hailey filed the present suit alleging that MedCorp's charge for transporting her to the hospital: 1) was "arbitrary, unconscionable, unreasonable, excessive," and "bore no relation to the services provided [to her] by MedCorp"; 2) amounted to a deceptive trade practice; 3) intentionally caused her emotional distress; and 4) negatively impacted her credit rating. MedCorp denied all of Hailey's claims and counterclaimed for the amount outstanding on the bill.
 {¶ 3} The matter came on for trial in June of 2005. Before the proceedings even began, Hailey's claim for deceptive trade practice was dismissed. At the conclusion of Hailey's case-in-chief, and upon MedCorp's motion for a directed verdict as to all counts, two additional claims of Hailey were dismissed: the one for intentional infliction of emotional distress, and another for injury to credit rating. Thus, all that remained of Hailey's claims was that the bill was arbitrary, unreasonable, excessive, and unconscionable.
 {¶ 4} At trial, the following facts were adduced. Following Hailey's accident at approximately 3:45 p.m., on March 7, 2002, the Toledo Fire Department was dispatched to the scene. Captain James Martin, a paramedic with the fire department, assessed Hailey's condition. She complained of dizziness, but had no other complaints. Captain Martin took her vital signs and medical history and, as a precaution, strapped her onto a backboard. As a result of this assessment, Captain Martin determined that Hailey needed only Basic Life Support (BLS) services, rather than the more involved and expensive Advanced Life Support (ALS) services.
 {¶ 5} If Captain Martin had determined that ALS treatment was needed, he would have called for a county life squad. But for BLS transport, the county engaged the services of several private ambulance companies, including MedCorp. The purpose and scope of this arrangement for BLS services is set forth in a contract between MedCorp and the county entitled "Lucas County Basic Life Support Agreement for Ambulance Companies." Because Captain Martin determined that Hailey did not require ALS services, he called for a private ambulance, and MedCorp was sent to the scene.
 {¶ 6} Pursuant to the Basic Life Support agreement, MedCorp and the other private contractors are allowed to administer ALS services only under certain circumstances. For instance, if a patient's condition deteriorates after the call is made for BLS transport, the private contractor is to perform whatever ALS services are necessary. But before doing so, the driver must radio the county to report the need for ALS services and to inform the county of the training level of the medical technicians in the ambulance. The county then has the option of sending out a county Life Squad to meet the private ambulance, or in the alternative, directing the ambulance to proceed to the hospital. The contract also provides for the private companies to make ALS runs if all county ambulances are occupied or if a patient desires to be transported to a hospital other than the one closest to the scene. It is undisputed in the instant case that Hailey's condition did not deteriorate after MedCorp was called and that Hailey did not request transportation to a hospital other than the one closest to the scene.
 {¶ 7} A few minutes after Captain Martin called for BLS transport, MedCorp employees Barbara Fifer and David McGaha arrived on the scene in a MedCorp ambulance. Fifer, like Captain Martin, is a paramedic; and McGaha, who drove the ambulance, is an advanced EMT. Fifer agreed that Hailey's only complaint was lightheadedness. Fifer checked Hailey's vital signs, and found everything within normal limits except for her blood pressure, which was somewhat elevated. On the way to the hospital, Fifer performed a head-to-toe check, looking at and feeling Hailey's body. Fifer stated that this check is performed on every patient, regardless of whether an assessment has already been performed by the county. Fifer further stated that Hailey's condition did not deteriorate in any way during the trip to the hospital.
 {¶ 8} While driving the ambulance to the hospital (without lights or a siren), McGaha called the county and reported that the run was "BLS." Under the terms of the Basic Life Support agreement, if the transport had been upgraded to ALS, MedCorp would have been required to file a report with the county within 72 hours. No such report was filed.
 {¶ 9} Despite the fact that MedCorp had been called for a BLS transport and had reported to the county that it had performed a BLS transport, Hailey's $961 bill from MedCorp listed numerous charges for ALS services. Specifically, the bill listed charges of $825 for "ALS AUTO ACCIDENT TRANSPORT"; $36 for "ALS Mileage"; and $100 for "ALS Supplies." Richard Bage, President and CEO of MedCorp, testified that MedCorp performed 50,000 ambulance runs for the county in 2002 and that approximately 80 percent of those were ALS runs. MedCorp's charges for a BLS run in this case would have totaled $711, including a flat fee of $425 for the BLS tranport, $36 for mileage, calculated at $9 per mile, a flat fee of $50 for BLS equipment, and an additional $200 that MedCorp added to all automobile accident runs in part because it found that bills for that service were difficult to collect.
 {¶ 10} Brookside Ambulance, like MedCorp, is a private ambulance company that has contracted with the county to do BLS transports. Brookside and MedCorp have executed identical contracts with the county to perform this service. Donald Kish, CEO of Brookside, testified that 1.87 percent of Brookside's runs are billed as ALS and that BLS runs are charged at $375 plus mileage. Gary Orlow, Manager of Lucas County EMS, stated that ambulance companies other than MedCorp billed approximately 2% of their runs as ALS. If a Brookside employee checked for vital signs and looked at and felt the patient's body from head to toe, the run would be charged as BLS.
 {¶ 11} At the conclusion of the trial, the court ruled from the bench, finding that the $961 charge was unreasonable and, instead, should have been only $461. The trial court also found that MedCorp's incorrect billing had been intentional and that MedCorp had a policy of billing for services that it did not deliver. On this basis, the trial court awarded Hailey compensatory damages in the amount of $1 and punitive damages in the amount of $5,000. MedCorp was awarded $461 on its counterclaim.
 {¶ 12} MedCorp timely appealed the trial court's decision, asserting the following assignments of error:
 {¶ 13} "I. THE TRIAL COURT ERRED IN FINDING THAT MEDCORP BREACHED ITS CONTRACT WITH THE PLAINTIFF BY PRESENTING AN UNREASONABLE AND/OR UNCONSCIONABLE BILL TO THE APPELLEE.
 {¶ 14} "II. TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT, IN AWARDING PUNITIVE DAMAGES ON A BREACH OF CONTRACT CLAIM AND/OR PERMITTING APPELLEE TO REFORM HER COMPLAINT TO ALLEGE FRAUD, FOR THE FIRST TIME, AT THE CONCLUSION OF PLAINTIFF'S CASE.
 {¶ 15} "III. THE TRIAL COURT ERRED BY REMOVING APPELLEE'S BURDEN OF PROOF CONCERNING ITS CLAIM THAT THE APPELLANT'S FEES WERE ARBITRARY, UNREASONABLE, EXCESSIVE AND/OR UNCONSCIONABLE.
 {¶ 16} "IV. TRIAL COURT ERRED, TO THE DETRIMENT OF APPELLANT, BY PERMITTING TESTIMONY, LAY AND EXPERT, AND DOCUMENTS WHICH PLAINTIFF FAILED TO DISCLOSE OR IDENTIFY DURING DISCOVERY."
 {¶ 17} MedCorp argues in its first assignment of error that the trial court erred in finding that MedCorp breached its contract with Hailey by presenting her with an unreasonable and/or unconscionable bill. MedCorp errs at the outset in its statement that the trial court found a breach of contract in this case. "[T]o prove a breach of contract, a plaintiff must establish the existence and terms of a contract, the plaintiff's performance of the contract, the defendant's breach of the contract, and damage or loss to the plaintiff." Samadder v. DMFof Ohio, Inc., 154 Ohio App.3d 770, 2003-Ohio-5340, at ¶ 27. A true contract requires a meeting of the minds as to the essential terms of the agreement. Legros v. Tarr (1989), 44 Ohio St.3d 1. The facts of this case clearly establish that there was no meeting of the minds as to the essential terms of the agreement. Thus, there was no true contract.
 {¶ 18} As the trial court recognized in its decision and judgment entry, this case involves an implied-in-law contract between MedCorp and Hailey. An implied-in-law contract, or a quasi-contract, is a not a true contract; rather, it is a legal fiction that creates an obligation based on equitable principles.Sabin v. Graves (1993), 86 Ohio App.3d 628, 633. Where, as here, a party confers a benefit upon another party without receiving just compensation for the reasonable value of the services rendered, the equitable remedy of quantum meruit is generally awarded. Aultman Hosp. Assn. v. Community Mut. Ins.Co. (1989), 46 Ohio St.3d 51, 55. Quantum meruit is often employed when a quasi-contract is created. Abbruzzese, supra. "The appropriate measure of quantum meruit damages is the reasonable value of the material and services that accrued to the actual benefit of the other party, less any damages suffered by the other party." Id., citations omitted.
 {¶ 19} Under Ohio law, a recipient of emergency medical services may be held liable to the health care provider pursuant to an implied-in-law contract or quasi-contract for the reasonable value of those services. Morehead, supra. The rationale underlying this principle was explained by the Fourth District Court of Appeals in Morehead, supra, as follows:
 {¶ 20} "One who is severely injured or ill such that he or she becomes unconscious and unable to seek or decline medical services is in need of the protection and assistance such a rule of law offers him. By imposing liability upon him, the law seeks to ensure that he will be provided the necessary services to save his life. Faced with the choice of forcing [the person who was served] to pay the reasonable value of the services he received or forcing those who render emergency medical services in cases such as this to risk doing so as a matter of charity, we must choose the former. Accordingly, [the person who was served] may be held liable in quasi-contract for the reasonable value of the services received by him." Id.
 {¶ 21} The reasonable value of the services must be demonstrated at trial by competent, credible evidence. Gioffrev. Simakis (1991), 72 Ohio App.3d 424, 428. The party asserting a claim in quantum meruit bears the burden of proof. Id. A defending party may raise the issues of the necessity and value of the emergency medical services as a defense to the provider's claim of nonpayment. See Associated Physicians of MCO, Inc. v.Baker (July 27, 1990), 6th Dist. No. L-89-209.
 {¶ 22} In the instant case, there was abundant competent, credible evidence to support the trial court's conclusion that the reasonable value of MedCorp's services to Hailey was $461, and that the billed amount of $961 was unreasonable. In calculating MedCorp's award, the trial court made an initial finding that ALS transportation was neither warranted nor employed in this case. Then, using MedCorp's own criteria for charging for BLS services as a guide, the court awarded $425 for BLS transport, plus $36 for the mileage charge. The court expressly declined to award the $200 "automobile accident" surcharge, finding that it amounted to an improper preemptive late fee. In addition, the court did not address the matter of the $50 equipment fee, a fee which, as evidenced at trial, would not have been assessed by MedCorp competitor Brookside Ambulance.
 {¶ 23} MedCorp cites in support of the bill's reasonableness Medicare and Medicaid regulations which they admit do not directly apply in this case (as Hailey was neither a Medicare or Medicaid recipient). In addition, MedCorp relies on a medical conditions code list they use which specifies thatnon-traumatically induced symptoms of unconsciousness, fainting, syncope, weakness, or dizziness warrant ALS level service. Finally, MedCorp relies on the fact the unit that was dispatched to the scene of the accident was staffed with ALS certified personnel. (This, despite the fact that only BLS transportation was requested by the county.) Putting all of this information together, MedCorp argues that billing Hailey at ALS rates was appropriate due to the confluence of the following two factors: 1) the responding MedCorp unit was staffed with ALS certified personnel; and 2) Hailey complained of dizziness, a condition that MedCorp claims warrants ALS assessment.
 {¶ 24} The regulations upon which MedCorp relies are set forth as follows:
 {¶ 25} "Advanced life support (ALS) assessment is an assessment performed by an ALS crew as part of an emergency response that was necessary because the patient's reported condition at the time of dispatch was such that only an ALS crew was qualified to perform the assessment." 42 CFR 414.605
(emphasis added).
 {¶ 26} "(c) `Advanced life support services, level 1; emergency (ALS1-emergency)' is the transport of one patient, or the first patient of a multiple passenger transport, who needs
an assessment by a crew member who is trained to the level of the EMT-intermediate or a paramedic and/or needs one or more advanced life support (ALS) services as defined in paragraph (A)(1) of rule 5101:3-15-01 of the Administrative Code." OAC 5101:3-15-03 (emphasis added).
 {¶ 27} In the instant case, there was ample evidence to suggest that at no point did Hailey need an ALS assessment.[1] Thus, even if we were to acknowledge the applicability of the Medicare and Medicaid regulations to the issue of billing in this case, the facts strongly support the trial court's conclusion that ALS billing was not justified.
 {¶ 28} The trial court's decision to reject MedCorp's convoluted and sophistic explanation as to why it was reasonable to bill Hailey at ALS rates when what she received were BLS services was not error. Accordingly, MedCorp's first assignment of error is found not well-taken.
 {¶ 29} MedCorp argues in its second assignment of error that the trial court erred in awarding punitive damages on a breach of contract claim and/or permitting appellee to reform her complaint to allege fraud, for the first time, at the conclusion of Hailey's case. Because, as we discussed above, this case involves an implied contract, or quasi-contract, rather than an express contract, we reject the argument that the trial court awarded punitive damages on a breach of contract claim. Instead, we will consider the argument that the trial court improperly permitted Hailey to reform her complaint to allege fraud at the conclusion of her case. Specifically, MedCorp argues that: 1) Hailey failed to make a claim for fraud that would comport with Civ.R. 9(B), requiring that the circumstances constituting the fraud be stated with particularity; and 2) the evidence was insufficient to establish all of the elements of a claim for fraud.
 {¶ 30} Civ.R. 9(B) provides that whenever fraud is alleged in a complaint, the circumstances constituting such fraud "shall be stated with particularity." Civ.R. 9(B). Those circumstances include: "the time, place and content of the false representation; the fact misrepresented; the identification of the individual giving the false representation; and the nature of what was obtained or given as a consequence of the fraud."Aluminum Line Prods. Co. v. Bard Smith Roofing Co., Inc.
(1996), 109 Ohio App.3d 246, 259. But Civ.R. 9(B) must be construed together with Civ.R. 8, which provides that pleadings should provide a "short and plain statement of the claim." Construed together, these rules require that a claim of fraud need only be pleaded with the particularity needed to give sufficient notice of the claim against a party in order that such party may prepare a defense. See Estate of Cattano v. High TouchHomes, Inc., 6th Dist. No. E-01-022, 2002-Ohio-2631. "Therefore, even though pleadings may be vague, if the defendant has notice of matters of which plaintiff complains, a strict application of Civ.R. 9(B) serves no useful purpose." Aluminum Line Prods.Co., supra, at 259.
 {¶ 31} In the instant case, what remained of Hailey's claims at the end of trial was, in its entirety, as follows:
 {¶ 32} "6. The Nine Hundred Sixty-One Dollar (961.00) charge of Defendant for transporting the Plaintiff four miles on March 7, 2002, from the scene of the collision to the St. Vincent Medical Center was arbitrary, unconscionable, unreasonable, excessive and not consistent with or compatible with other charges of Defendant MedCorp, Inc. for such services rendered or consistent or compatible with the charges of other ambulance companies in the same locale and Plaintiff further states that said charges bore no relation to the services provided by Defendant to her."
 {¶ 33} We find that such paragraph, although sufficient to provide MedCorp with notice of the circumstances of the false representation such that it could prepare a defense, failed to provide any indication of what was obtained or given as a consequence of the fraud. We therefore find that the complaint does not set forth all of the required elements for a fraud claim with sufficient particularity, as required by the civil rules.
 {¶ 34} Even if there were no deficiencies in Hailey's pleading, her claim for fraud would nevertheless fail. In order to establish a claim for fraud, a party must demonstrate all of the following: 1) a representation or, where there is a duty to disclose, concealment of a fact; 2) which is material to the transaction at hand; 3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; 4) with the intent of misleading another into relying on it; 5) justifiable reliance upon the representation or concealment; and 6) a resulting injury proximately caused by the reliance.Mussivand v. David (1989), 45 Ohio St.3d 314, 322. Hailey argues that each of these elements was established at trial, as follows: 1) MedCorp represented in its bill that it provided ALS services to Hailey, while the evidence showed that only BLS services were provided; 2) the false bill was clearly material to the transaction; 3) MedCorp had actual knowledge of the bill's falsity, as demonstrated by the fact that the company was summoned to the scene to provide a BLS transport and by the fact that MedCorp's driver made a call to the county stating that the company had provided BLS services; 4) MedCorp intended to mislead Hailey into relying on MedCorp to provide a reasonable bill for the service; 5) Hailey, vulnerable at the scene and unable to choose which ambulance transported her, relied on MedCorp to bill her appropriately for the treatment provided to her; and 6) Hailey was harmed when MedCorp turned the false bill over to a collection agency, which eventually sued her for non-payment of the false bill, forcing her to retain counsel to fight the fraudulent bill.
 {¶ 35} Unfortunately for Hailey, we do not find that the fifth element, the element of justifiable reliance was met in this case. It simply is not enough to state that she relied on MedCorp to bill her appropriately. The fact is, she did not pay the bill or in any other way demonstrate her reliance on the unreasonable bill. This deficiency is evident in her statement of her injury as well. That is, the injury she asserts — having the bill turned over to the collection agency, and the resulting lawsuit — was caused not by any reliance upon the bill, but rather upon her failure to pay it.
 {¶ 36} Although the facts establish beyond question that MedCorp over-billed Hailey for its services, because Hailey failed to establish any cognizable claim against the company, we are constrained to find that she was not entitled to damages of any kind, either compensatory or punitive. Accordingly, MedCorp's second assignment of error is found well-taken.
 {¶ 37} MedCorp argues in its third assignment of error that the trial court erred by removing Hailey's burden of proof concerning its claim that appellant's fees were arbitrary, unreasonable, excessive and/or unconscionable. As indicated in our discussion of MedCorp's first assignment of error, it was MedCorp's burden to demonstrate the reasonable value of its services. See Gioffre v. Simakis, supra, 72 Ohio App.3d at 428. It was Hailey's prerogative to submit evidence challenging the necessity and value of the emergency services as a defense to MedCorp's claim of nonpayment. See Associated Physicians of MCO,Inc. v. Baker, supra. There is nothing in the record to suggest that the trial court incorrectly placed any burden on MedCorp, and, as discussed above, there was ample evidence to support the trial court's determination of the reasonable value of MedCorp's services. MedCorp's third assignment of error is found not well-taken.
 {¶ 38} MedCorp argues in its fourth assignment of error that the trial court erred by permitting testimony and documents which Hailey failed to disclose or identify during discovery. We note at the outset that a trial court has broad discretion with respect to the admission and exclusion of evidence; a reviewing court will not reverse a trial court's decision absent a clear abuse of that discretion that materially prejudiced the objecting party. O'Bryon v. Poff, 9th Dist. No. 02CA0061, 2003-Ohio-3405, at ¶ 21. An abuse of discretion connotes more than a mere error in judgment; it indicates an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. In addition, "a reviewing court will presume that the trial court considered only properly admitted evidence when it acts as the trier of fact in a bench trial." City of Akron v. Fowler, 9th Dist. No. 21327, 2003-Ohio-2844, at ¶ 7.
 {¶ 39} MedCorp claims that the trial court erred to MedCorp's prejudice by improperly admitting and relying upon evidence of a 2004 contract modification in the Basic Life Support agreement that added a cap to the amount that MedCorp could bill.
 {¶ 40} Evid.R. 407 provides that evidence of subsequent remedial measures is inadmissible to prove negligence or culpable conduct. Evid.R. 407. Here, the trial court included only a single reference to the contract modification in the last paragraph of its decision and judgment entry, stating: "There was one final thing I wanted to say. The level of punitive damages is limited to $5,000 because while the Court hopes that that will deter such conduct in the future, the Court also notes that it admitted into evidence a subsequent contract which caps the limits of billing by ambulance companies, and I think that also is a great deterrent to this kind of conduct in the future." As pointed out by Hailey, the contract modification, far from prejudicing MedCorp, benefited the company to the extent that it limited the punitive damages that were imposed. There is nothing in the record to suggest that the trial court considered the rate cap as evidence that the rates prior to the cap were excessive. Because MedCorp has failed to demonstrate any prejudice resulting from the admission of evidence concerning the contract modification, the decision of the trial court will not be disturbed.
 {¶ 41} MedCorp next argues that it was prejudiced by "multiple" surprise witnesses who were allowed to testify at trial — namely, Toledo Fire Department paramedic Captain James Martin, and Lucas County EMS Communication Supervisor Patricia Moomey. Captain Martin provided testimony about the protocol by which he, as a first responder, decides whether a patient needs ALS or BLS transportation. Relying on his own report, he stated that only BLS was needed in this case, so he called for a private ambulance. He explained that if ALS had been needed, he would have called for a county life squad. As Hailey points out, all of this information can be found in the Basic Life Support agreement. Also, it matched the testimony of Gary Orlow, Manager of Lucas County EMS.
 {¶ 42} Moomey, too, provided cumulative evidence that included nothing that surprised MedCorp. Her testimony was based upon the county's transcript of communications that it had had with the MedCorp ambulance on the date of Hailey's accident. Moomey's testimony that MedCorp called in a BLS transport simply confirmed testimony given by MedCorp employees Barbara Fifer and David McGaha.
 {¶ 43} The fact is, MedCorp never disputed that it routinely billed for ALS services after calling in to the county that it was performing a BLS transport, and MedCorp never disputed that it followed this practice in Hailey's case. Neither Captain Martin's nor Moomey's testimony was prejudicial in this case. Accordingly, appellant's fourth assignment of error is found not well taken.
 {¶ 44} The judgment of the Toledo Municipal Court is affirmed to the extent that it ordered Hailey to pay MedCorp $461 for the services she received. To the extent that the trial court ordered MedCorp to pay Hailey compensatory damages in the amount of $1, and punitive damages in the amount of $5,000, the judgment is reversed. MedCorp is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Pietrykowski, J., Skow, J., Parish, J., concur.
[1] MedCorp's reference to an inapplicable section of the conditions chart (dealing with non-traumatic injury) does not compel any other conclusion.